PEACOCK CANNING CO. et al. v.
TURNEY.
No. 463.

United States Emergency Court of Appeals.

Heard at Washington May 21, 1948.
Decided July 14, 1948.

Joseph J. Smith, Jr., of Washington, D. C., (O. R. McGuire, Jr., and Hogan & Hartson, all of Washington, D. C., on the brief), for complainants.

Israel Convisser, of Washington, D. C., (Tom C. Clark, Atty. Gen., T. Vincent Quinn, Asst. Atty. Gen., and Floyd L. Cook and Charles G. Mulligan, both of Washington, D. C., Attorneys, all of the Department of Justice, on the brief), for respondent.

Before MAGRUDER, McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainants are packers of Maine sardines, whose protests, in view of their similarity, were combined before the Administrator. Consequently a joint complaint followed in this court.

Complainants, during the twelve months preceding March 31, 1945, had sold to the Government, at its order, "standard keyless sardines" constituting 55% of their total production during that period. Complainants had found from their experience in 1944 that the maximum prices were such as to yield to them little or no profit. Furthermore, the cost of packing had steadily increased, and, in March, 1945, the number of fish available for processing had so declined and those caught were of such inferior quality as to make it probable that production during the coming season would be greatly curtailed. On March 6, 1945, the War Food Administration requested complainants and other canners to sell sardines to the Commodity Credit Corporation for the twelve months beginning April 1, 1945, in such quantities as should thereafter be ordered by the Government, at O.P.A. ceiling prices in effect on the date of delivery. Complainants agreed to comply, their offers to do so being accepted by the corporation on March 28, 1945. In the meantime, on March 26, the War Food Administration had ordered canners to set aside and reserve for delivery to the Government 80% of all sardines packed during the twelve months beginning April 1. Sardines were greatly in demand from the armed forces; hence the Government's requisition of 80% of the output of the canners. The maximum ceiling price at that time was $4.32 per case less 1½% cash discount. This price, complainants claim, and there seems to be no dispute, was below canners' costs.

The canners called the situation to the attention of the War Food Administration and a conference of representatives of O.P. A. and members of the industry was held in

Washington May 16, 1945. About June 1, O.P.A. decided to establish a maximum price of $4.55 per case and a price to the Government of $4.43625, less 1½% cash discount. Apparently the War Food Administration considered the price so low as to be likely to impede production necessary to meet the demands of the armed forces. The Director of Economic Stabilization participated in a preliminary conference. The War Food Administration, in order to assure that production would meet Government requirements, had requested that sales of Maine sardines to the Government be exempted from price control or that the maximum price be increased to not less than $4.75. Eventually, however, O.P.A. adhered to the price it had fixed, but added a price adjustment clause to the regulation as subparagraph (f) of Section 1364.112a of MPR 184, Amendment 6 (10 F.R. 8130, 8132) issued June 29, 1945, as follows: "(f) Amount of adjustment. (1) In the case of applicants more than 80 percent of whose gross dollar sales volume during the current fiscal year consisted of Maine sardines, the adjustment shall be sufficient so that the applicant will realize 25 cents over his 'average total cost' for each case of Maine sardines delivered to the War Food Administration, or any procurement agency thereof, between the date the application was filed and March 31, 1946, (2) 'Average total cost' shall be computed by: (i) Multiplying the applicant's total cost of all operations during the current fiscal year * * * by the ratio obtained through dividing his total gross dollar sales volume of the standard keyless can pack during the current fiscal year by his total gross dollar sales volume from all operations and (ii) Dividing the result by the number of cases of the standard keyless can pack he produced during the current fiscal year."

Under MPR 184, Amendment 6, the price to the Government was $4.43625 less 1½% cash discount, if packed east of the Penobscot river, and $4.72875, less the same discount, if packed west of the river or outside the state of Maine. On July 2, 1945, each of the complainants filed its application for adjustment of the prices at which it was delivering sardines to the Government and each of their contracts was there-

after amended so as to provide that the price to be paid for sardines sold and delivered under such contracts "shall be the maximum ceiling price, as adjusted by the Office of Price Administration" upon application. Thereafter, during the fiscal year, complainant Peacock sold to the Government under its contract 205,138 cases and complainant Seaboard 198,363 cases of canned keyless sardines. The question presented to us therefore is whether the adjusted price, as finally fixed by the Office of Price Administration and the Director of the Division of Liquidation, is valid and this, in turn, involves the question of whether the Administration's interpretation of the formula for adjusting the price is justified by the language of the adjustment provision and, in the alternative, whether, if those provisions have been correctly interpreted, the second paragraph of the regulation, thus interpreted, is valid.

The regulation provides that in filing petitions for adjustment, applicant shall file Form A Annual Financial Report upon a blank issued by the O.P.A. supplying data for the current fiscal year. Included in this form is a profit and loss statement, Item 2(f) of which requires applicant to give effect to "net changes in in-process and finished inventories" in making computation of both "cost of goods and services sold," and "net profit from operation" for the current fiscal year. Accordingly, in completing their respective Forms A, each complainant gave effect to such changes and, in computing their "total cost of all operations during the current fiscal year," included in and added to their total cost a decrease in the value of their finished inventory equal to the difference between the value of such inventory on hand at the beginning of that year and the value of such inventory on hand at the end of the year. They likewise carried into this statement the changes in their inventories of raw materials and supplies, but, inasmuch as the value of such inventories had increased rather than decreased, the difference between their opening and closing values was deducted from their total cost. On the other hand, inasmuch as there had been a decrease in the value of finished inventories, this was added to and includ-

ed as a part of complainant's total cost. This decrease in inventories of the complainants was, in the case of Peacock, $147,223 and, in the case of Seaboard, $137,421.

On September 5 and September 11, the Administrator issued unnumbered Letter Order No. — and Letter Order No. L-15 denying Peacock's application for adjustment and, on September 5, an order denying Seaboard's application, being unnumbered Letter Order No. — and, on November, 25, an order fixing Seaboard's price at $4.47 per case net. The Administrator found that the prices fixed brought to each complainant a profit of at least 25¢ per case over its average total cost. The orders, in effect, approved complainants' action in giving effect to the changes in the inventories of unfinished or in-process material, in calculating total cost of all operations but disapproved complainants' action in giving similar effect to changes in finished inventories. Accordingly, in determining complainants' total cost of all operations, O.P.A. excluded from cost the amounts by which complainants' inventories of in-process commodities had increased during the current fiscal year, but refused to include the amounts by which complainants' finished inventories had decreased. Thereupon, after vainly protesting informally, complainants filed with O.P.A. their formal protests in which they contended that the Administrator had misconstrued and misapplied the term "total cost of all operations during current fiscal year" as used in the adjustment paragraph of the regulation and, alternatively, that, if the Administrator's interpretation and application of the term should be correct, then subparagraph (2) of paragraph (f) is invalid.

■ On December 30, 1947 the Director of the Division of Liquidation, the present respondent, entered an order denying entirely the protests of each complainant, except that he dismissed, on the ground of laches, that part of the protests which sought to raise objection to the regulatory exclusion of officers' salaries from cost. In his opinion accompanying the order, the Director interpreted the adjustment formula as requiring him to ignore changes in inventories of finished product, although necessitating inclusion of the changes in inventories of raw material and unfinished goods. Concerning the claim of erroneous exclusion of officers' salaries in the adjustment formula, the Director said "protestants are barred from asserting this objection by their own laches." That such a conclusion was erroneous is clear from our decision in Charles R. Krimm Lumber Co. v. Turney, Director of Liquidation Em.App.1948, 168 F.2d 72. The dismissal of that portion of the protest, without determination upon the merits, therefore, was improper.

Following the order denying the consolidated protest in part and dismissing it in part, complainants came to this court, asking that we reverse and set aside the Director's order of December 30, 1947 and declare invalid the Letter Orders, including the interpretation and construction of subparagraph 2 of paragraph (f) of Section 1364.112(a) MPR 184 Amendment 6, and, in the alternative, that, if the court should agree with the interpretation of said subparagraph 2 by the Price Administrator and the Director of the Division of Liquidation, we declare subparagraph 2 invalid.

The question eventually turns upon the comparatively narrow issue of whether, in computing complainants' total cost of all operations during the current fiscal year, as required by the adjustment paragraph, the Director properly excluded changes in inventory of finished goods. We have seen that the War Food Administration had thought that, in order to secure an adequate supply for the armed forces, price control should be removed as to sardines sold the Government, in view of the fact that canners were losing money, that costs were rising and that a short crop threatened. O.P.A. thought it best not to exempt sales of the product to the Government from price control. It agreed that the price paid the producers should be such as to realize the industry's prewar normal profit of 25¢ per case, less conventional discounts, and it so recited in the regulation. In other words, everybody concerned agreed that some means for assuring continuation of ample production of sardines for the armed forces was essential and

O.P.A., by the regulation, attempted to bring to realization this agreed goal, that is, assurance of a net profit of 25¢ per case. O.P.A. promulgated the regulation as its solution to the problem. To make the plan workable, it provided that the price should be fixed at a certain dollar and cent price, but that, if the members of the industry should find that they were not realizing the purpose of the regulation, namely, 25¢ per case profit, then, under the special adjustment provision, they might present to the Administrator, application to have their price adjusted so that it would reflect 25¢ per case profit.

■ There can be no question that in preparing the ordinary profit and loss account, a sound computation of profit and loss can not be made otherwise than by taking into consideration inventories both at the beginning of the specific period and at the end of that period, in this case, the fiscal year. Thus, if either complainant had at the end of its fiscal year, an inventory of $150,000 in finished goods, obviously that inventory represented the cost of raw material, labor, processing and canning,—in other words, the total cost of producing canned sardines on hand at the end of the year. This naturally passed into and became a part of the current assets of the producer and, as a current asset, became a capital asset representing property purchased at its cost of production. When this is included in the sales during the ensuing year, the capital asset, constituting $150,000, is converted into sales and its value realized in receipts from sales. If, at the end of the year, there is an equal inventory of $150,000, inasmuch as no capital asset has passed into sales, it continues in the current assets of the producer and, therefore, does not enter into computation of cost of operation, because no receipts of sale have been realized from it, for, instead of going into the category of sales, it remains in the current assets. This is always recognized by the Government in computing net gain in income tax reports. Respondent concedes that this is sound accounting practice and, indeed, no other method would truly reflect the annual profit or loss of any manufacturer or dealer.

But, says the Director, it was not the intent to follow sound accounting practice; it was not the intent to follow the requirements of a proper profit and loss accounting but only to prescribe a formula for adjustment. We fail to find any sound basis for such a distinction. The Administrator himself required a return on a form prescribed by him reflecting changes in inventories, and the whole purpose of the regulation was to arrive at a computation that would determine whether the complainants were realizing a profit of 25¢ per case. In other words, only a profit and loss statement and no other true mathematical method could determine the real profit, the true profit. The expressed purpose was the very thing contemplated in a profit and loss statement, namely, the determination of whether the producer had made 25¢ per case profit so far as Government purchases were concerned, which was assured him by the regulation. Indeed, it appears that the Administrator originally contemplated computation of costs upon the basis of consideration of changes in inventories, for he said, in a letter on September, 1946, that he had ignored inventory changes because it was thought that such changes "would wash one another out." But as a matter of fact, the changes did not wash out and, in the end, each complainant found itself deprived of the right to deduct costs, in the one instance of $147,000 and in the other, of $137,000, representing a capital asset bought and paid for in the preceding year and converted into sales during the current year but excluded from determination of the costs of the sales of which they constituted a part. Such an interpretation of the regulation by the Administrator and Director was, we think, unreasonable. It failed to take into consideration the real facts and is therefore without basis in fact.

The Director says that he construed the phrase, total cost of all operations during the year, as excluding consideration of the cost of inventoried goods on hand at the beginning of the year, even though such goods were sold during the year and their sales price passed into receipts from sales. We are not persuaded that this construction is justified. Total operations during the year include all corporate operations prop-

er under the corporate charter; they include the sales during the year of the goods inventoried and on hand at the beginning of the year, for those are as much a part of total operations for the year as the sales of goods produced during the year.

We conclude that, in making his computation of prices in the Letter Orders protested, the Director improperly and unreasonably misinterpreted the phrase "total cost of all operations"; that a reasonable construction of that phrase necessitates consideration of the annual increase or decrease of finished inventories, in order to arrive at complainants' actual cost, and to assure them, as the regulation purports to do, that they shall have realized a profit of 25¢ per case. Accordingly the orders will be set aside and the cause remanded to the Director for further proceedings in accord with the announcements herein contained.

Judgment will enter accordingly.