## R. J. PEACOCK CANNING CO. v. COM-MODITY CREDIT CORP.

### No. 10627.

United States Court of Appeals
District of Columbia Circuit

Decided Nov. 22, 1950.

Joseph J. Smith, Jr., Washington, D. C., with whom O. R. McGuire, Jr., Washington, D. C., was on the brief, for appellant.

Hubert H. Margolies, Atty., Department of Justice, Washington, D. C., with whom Asst. Atty. Gen. H. G. Morison, and George Morris Fay, U. S. Atty. and Edward H. Hickey, Atty., Department of Justice, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER and WASHINGTON, Circuit Judges, and WILKIN, District Judge, Retired, sitting by designation.

WASHINGTON, Circuit Judge.

This case is an offshoot of Peacock Canning Co. v. Turney, Em.App., 168 F.2d 1019, and much of the factual background is there disclosed.

Appellant sold 205,138 cases of sardines to the Commodity Credit Corporation in 1945 and 1946, under a contract which provided that the price to be paid to the contractor (appellant) should be the ceiling price "* * * for the appropriate species, can size, pack, and grade as established by the Office of Price Administration for sales to governmental agencies." The contract, as amended, went on to say:

"If the Contractor has applied or will apply within five days after the date of this * * * amendment, for an adjustment in accordance with Section 1364.112(a) of Maximum Price Regulation No. 184 of the Office of Price Administration, the price payable to the Contractor shall be the maximum ceiling price as adjusted by the Office of Price Administration in acting upon such application. CCC will make interim payment of the maximum ceiling price effective on the date of this * * * amendment, provided the Contractor has fully complied with the provisions of the Contract and will make final payment upon proof submitted by the Contractor as to the action taken by

the Office of Price Administration upon his application. * * *

"*Provided that the prices listed above are subject to discounts applicable to sales to Government Agencies.*" (Exhibit 4, Jt. App. 15A-17A) (Emphasis supplied)

The OPA regulation then in force established a maximum price on sales of sardines to Government agencies, less a 1½% discount for payment within 10 days. Maximum Price Regulation No. 184, § 1364.112, 10 F.R. 8130. The Commodity Credit Corportation, within 10 days after delivery, paid the appellants the sum of $920,691, being the total maximum price so established after the discount of 1½% ($14,020). It is this discount which gives rise to the controversy here.

Under the contract provision quoted above, the contractor applied to the OPA for a price increase. This was refused, and the case was thereupon taken by the contractor to the Emergency Court of Appeals. That court found that the contractor was entitled to a price increase and specified the manner in which it should be computed. Judge Lindley, speaking for the court, stated that the OPA had "agreed that the price paid the producers should be such as to realize the industry's prewar normal profit of 25¢ per case, *less conventional discounts,* and it is so recited in the regulation." Peacock Canning Co. v. Turney, supra, 168 F.2d at 1021. (Emphasis supplied.) The Emergency Court of Appeals remanded the case to the OPA's successor agency for action in accordance with the opinion. The successor agency prepared a mathematical calculation showing a profit margin of 25¢ per case, and ruled that the maximum price per case should be $4.764 net. No mention was made of any discount.

The Commodity Credit Corporation thereafter paid the appellants the sum of $42,-627. This amount was the difference between the new maximum price ($4.764 per case) multiplied by the number of cases (a total of $977,339), less the old maximum price before discount multiplied by the number of cases (a total of $934,712). Appellants thus received a total of $963,318 (the original payment of $920,691, plus the pay-

ment after the price adjustment of $42,627). Appellants contend that payment should have been made of a total of $977,339; that after the price adjustment it was entitled to receive a total of $56,647, the difference between $977,339 and the amount of cash actually paid on delivery by Commodity Credit ($920,691). The dispute is thus with regard to the discount of $14,-020 which the Government received for making prompt payment of the original maximum ceiling price, and it is for that amount which appellant brought this suit.

The District Court granted appellee's motion for summary judgment and denied appellant's motion for summary judgment. We think the District Court was correct.

■ As we have seen, the contract expressly provided for a discount; this discount was defined in applicable regulations; prompt payment was made by Commodity Credit at the original discounted rate and the check for such payment was cashed by the appellant, which thereafter had the use of the fund. Appellant does not dispute that at the time the discount was taken, appellee was entitled to it under the contract and under the then existing OPA regulations. Appellant argues that the price adjustment retroactively set aside the earned discount. However, Judge Lindley spoke of the duty of the OPA to fix a new maximum price "less conventional discounts." We cannot presume that he did not mean what he said, or that he was speaking casually and did not intend his words to have legal effect. Nor do we regard the subsequent action of the successor agency as being in disregard of his admonition. We do not believe that the agency intended to ignore his order, or that it in fact intended to do more than to supply a calculation which would fit into and become a part of the contractual provision quoted above. It did not, in other words, intend to amend the contract between the parties, which, even apart from applicable OPA regulations, expressly provided for the giving of a discount.

■■ The result reached appears to us not only to conform to the intention of the parties and the applicable OPA regu-

lations, but also to accord with normal commercial practice. "A cash discount is a reward for prompt payment. It is a trade practice long established, and is authoritatively recognized as being not a deduction from the purchase price." Weco Products Co. v. Mid-City Cut-Rate Drug Stores, 55 Cal.App.2d 684, 687, 131 P.2d 856, 858. Rather, "It relates simply to the mode of payment, which may, if observed, operate as a satisfaction of the price to be paid by the acceptance of a less sum." Ballard v. Thomas, 1856, 19 How. 382, 383, 15 L.Ed. 690. That prompt payment has considerable commercial value has long been recognized. For example, "payment, before maturity, of less than the amount of a liquidated and undisputed claim * * * [is] sufficient consideration to support the creditor's agreement to accept it in discharge of the entire claim." See 24 A.L.R. 1475, and cases cited therein. Appellant here received the full benefit of prompt payment of the initial purchase price and is not entitled to a refund of the discount applicable to that price.

The judgment of the District Court is affirmed.