# TYLER LUMBER COMPANY v. RUFUS T. LOGAN, COMMISSIONER OF TAXATION.

195 N. W. 2d 818.

March 17, 1972—No. 43286.

*Wiese & Cox* and *Howard S. Cox*, for appellant.

*Warren Spannaus*, Attorney General, and *Ronald S. London*, Special Assistant Attorney General, for respondent.

MURPHY, JUSTICE.

Appeal from a summary judgment. Appellant, Tyler Lumber Company, brought the action against the commissioner of taxation to recover an amount paid pursuant to a deficiency assessment for unpaid sales taxes. The issue is whether patronage refunds should be excluded in arriving at a "sales price," as defined by Minn. St. 297A.01, upon which an excise tax is imposed.

Taxpayer, Tyler Lumber Company, operates as a lumber cooperative, selling hardware and building supplies to farmers, contractors, and rural residents within the trade area of Tyler, Minnesota. It sells materials and supplies to members and nonmembers of the cooperative on equal terms at predetermined sales prices. Each customer pays at the time his purchase is made, and a sales tax is computed on the sales price. Taxpayer keeps a record of the amounts of these purchases made by each customer. At the end of each fiscal year, taxpayer determines its net income, and, after deducting state and Federal income taxes, dividends to stockholders, and an amount transferred to retained earnings, it distributes the remainder to each customer in proportion to the amount of his purchases during the year.

Upon audit of the sales and use tax returns filed by taxpayer for the period ending March 31, 1968, the Department of Taxation assessed an additional tax which was paid under protest. In determining the amount of sales tax to be paid, taxpayer had deducted the amount of the patronage refunds from the quoted sales price. With refunds running at approximately 20 percent of gross sales, taxpayer had determined its sales tax liability based on approximately 80 percent of its gross sales. Its claim

for refund was rejected by the commissioner, and his determination was sustained by the summary judgment from which this appeal is taken.

1. Taxpayer contends that the tax should be assessed on the basis of approximately 80 percent of the sales price of goods sold to its customers because (1) the price is not finally determined until the end of each year; (2) the original amount paid is in the nature of a deposit on a sale which is not consummated until the end of each annual accounting period; and (3) the refund is in the nature of a discount allowed before or at the time the sale is consummated.[1]

It is the commissioner's contention that Minn. St. c. 297A, together with regulations applicable thereto, precludes a deduction of patronage dividends from gross receipts for the purpose of determining the amount of sales tax due the state.

Minn. St. 297A.02 provides:

"There is hereby imposed an excise tax of three percent of the gross receipts of any person from sales at retail, as hereinbefore defined, made in this state after July 31, 1967. In no case shall the tax imposed hereby upon the seller exceed the amount of tax which he is authorized and required by law to collect from the purchaser." [2]

---

[1] It should be pointed out, however, that in oral argument counsel for taxpayer agreed that the title to the merchandise passes at the time of sale and that, in the event of default in payment, the full amount of the sales price is claimed.

[2] Statutory definitions germane to the constructon of Minn. St. 297A.02 are as follows:

Minn. St. 297A.01, subd. 2. " 'Person' includes any individual, partner, officer, director, firm, partnership, joint venture, association, cooperative, social club, fraternal organization, municipal or private corporation whether organized for profit or not, estate, trusts, business trusts, receiver, trustee, syndicate, the United States, the state of Minnesota, any political subdivision of Minnesota, or any other group or

We hold that the "sales price" in the case at bar, i. e., the consideration received by taxpayer from the customer, is the predetermined sales price which the customer pays at the time he purchases the merchandise. Any patronage dividend that might be paid is, and by its very nature must be, allowed after the sale is consummated since (1) it is calculated on the basis of sales completed during the year by the transfer of title or possession,

---

combination acting as a unit, and the plural as well as the singular number. * * *"

§ 297A.01, subd. 9. " 'Gross receipts' means the total amount received, in money or otherwise, for all sales at retail as measured by the sales price. Gross receipts from sales may, at the option of the taxpayer, be reported on the cash basis as the consideration is received or on the accrual basis as sales are made."

§ 297A.01, subd. 8. " 'Sales price' means the total consideration valued in money, for a retail sale whether paid in money or otherwise, excluding therefrom any amount allowed as credit for tangible personal property taken in trade for resale, without deduction for the cost of the property sold, cost of materials used, labor or service cost, interest, or discount allowed after the sale is consummated, the cost of transportation incurred prior to the time of sale, any amount for which credit is given to the purchaser by the seller, or any other expense whatsoever. A deduction may be made for charges for services that are part of the sale and for interest, financing, or carrying charges, charges for labor or services used in installing or applying the property sold or transportation charges if the transportation occurs after the retail sale of the property only if the consideration for such charges is separately stated. There shall not be included in 'sales price' cash discounts allowed and taken on sales, the amount refunded either in cash or in credit for property returned by purchasers within three months of its purchase or the amount of any tax (not including, however, any manufacturers' or importers' excise tax) imposed by the United States upon or with respect to retail sales, whether imposed upon the retailer or the consumer."

And, lastly, § 297A.01, subd. 3, defines when a sale is consummated by providing in relevant part: "A 'sale' and a 'purchase' includes, but is not limited to, each of the following transactions:

"(a) Any transfer of title or possession, or both, of tangible personal property, whether absolutely or conditionally, and the leasing of or the granting of a license to use or consume tangible personal property, for a consideration in money or by exchange or barter."

or both, of tangible personal property, and (2) it is paid after the close of taxpayer's fiscal year. Accordingly, the provisions of Minn. St. c. 297A clearly indicate that dividends may not be deducted from gross receipts for purposes of calculating the amount of sales tax due to the state of Minnesota.

Furthermore, § 297A.29 provides:

"The commissioner shall promulgate all needful rules and regulations for the administration and enforcement of sections 297A.01 to 297A.44 not inconsistent with its provisions and such regulations shall have the force and effect of law."

Pursuant to that section the commissioner of taxation has promulgated Sales and Use Tax Regulation 23(d), which provides that:

"* * * In computing 'sales price,' the total consideration for the sale shall not be reduced by the discount allowed where the amount of the discount is determined by events that occur subsequent to consummation of the sale."

Since the amount of patronage dividends to be paid, if any, is determined by events occurring after the sales are consummated, it must be concluded that patronage dividends may not be deducted in computing the "sales price" defined in § 297A.01, subd. 8.

Nor may patronage dividends be deducted under § 297A.01, subd. 8, as cash discounts. Taxpayer specifically admitted that it does not grant "cash discounts," as defined in Sales and Use Tax Regulation 24(d), on the sale of any items either to members or nonmembers. And patronage dividends clearly are neither the same as, nor analogous to, cash discounts. We accordingly conclude that the district court properly granted summary judgment.

We think the trial court correctly analyzed the issue in his memorandum when he said:

"The question is as to whether or not the cooperative company patronage refund is to be considered in determining sales price

for purposes of the statute; that is, whether or not such refund is to be deducted from a sales price before the tax is to be applied. Counsel has not drawn the attention of the Court to, nor is the Court aware of, any Minnesota decision on this point. Plaintiff has referred to federal rules and regulations concerning the treatment of patronage dividends for Federal Income Tax purposes and plaintiff has also referred to decisions in other jurisdictions, concerning treatment of such dividends. However, the cases to which plaintiff have [sic] referred are not applicable here as there is no enforceable contract between the buyer and plaintiff. Plaintiff has the absolute right to determine if and how much the yearly patronage dividend shall be. The buyer can neither compel a dividend nor determine the amount. Plaintiff seeks to give contract effect to its past experience and to its hopes and expectations as well as the hopes and expectations of its customers as they refer to annual dividends.

"If plaintiff does in fact have an enforceable contract with any customer as to any transaction in which plaintiff is legally bound to reduce the initial sales price to some ascertainable figure, such figure could very well be 'sales price' within the terms of the statute. But that is not the case here.

"The Court also notes that the statute makes the sales tax applicable to cooperatives. Considering the number of cooperatives in the state, their great volume of business, and the great number of people involved in cooperative work and the importance of cooperatives to the economy of this state, it can be assumed that the legislators were well acquainted with cooperative organizations and operations concerning the patronage dividend or refund. The legislature did expressly set out certain items which can be deducted before application of the tax. The legislature could have just as easily included the patronage dividend as one of those items."

We agree with the trial court that taxpayer is in fact a retailer and that the amounts originally charged to its members for materials purchased constitute gross receipts from sales. Tax-

payer cites the Ohio case of Columbus Southern Lbr. Co. v. Peck, 159 Ohio St. 564, 113 N. E. 2d 1 (1953), where a sales contract specified a price of 90 percent of the list price with an additional 10-percent discount if purchases should reach $900,000. This case is clearly distinguishable. In the Ohio case, the sales agreement specifically postponed final determination of the sales price pending a condition subsequent over which the seller had no control.

2. The taxpayer further contends that the trial court erred in granting summary judgment because the record contains inferences which might present a question of material fact. The precise fact issue, on the basis of the record, is not explained. At the time this matter was submitted to the district court, both parties moved for summary judgment. It seemed to be agreed that there was no issue of any material fact for a jury to pass upon. Rule 56.03, Rules of Civil Procedure. The commissioner here does not dispute any of the facts asserted by taxpayer. There is merely a dispute as to the interpretation of the sales tax statute as it may be applied to the facts as presented by the record, which includes affidavits of taxpayer's customers as well as its own accounts and records. Since the issue presented can be resolved merely by applying the provisions of Minn. St. c. 297A to the undisputed material facts, the issue is necessarily a legal issue subject to disposition by summary judgment.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.