Pea River Electric Cooperative appealed to the Circuit Court of Montgomery County a final assessment of gross receipts tax entered by State of Alabama Department of Revenue (State). Judgment was entered by the court on August 4, 1982, setting aside the assessment and directing a refund of tax, penalty and interest paid by Pea River under the assessment. State appeals.
Wiregrass Electric Cooperative appealed a similar assessment. The parties presented the appeal to the Circuit Court of Montgomery County upon the stipulation that the legal and factual issues were the same as those in the Pea River case previously tried before another judge. The transcript of the Pea River case was submitted by agreement. A final judgment was entered on November 29, 1982. Its provisions were the same as the judgment in Pea River. The State appealed. The issues being identical, the cases have been consolidated on appeal. The designation "cooperative" in this opinion applies equally to each appellee.
Cooperative, organized in accord with § 37, Chapt. 6, Code of Alabama 1975, is a utility and subject to the utility gross receipts tax imposed under § 40-21-82, Code 1975. A utility cooperative is operated on a non-profit basis and charges its members or patrons only an amount sufficient to cover *Page 786 
its expenses. Each year an estimated sum is calculated to cover the expenses of its operation and service. Each patron is required to furnish capital to the cooperative to cover the cost of its operation. A separate amount is set up for each patron to indicate the capital furnished during a fiscal year. The sum of the monthly payments made into each patron's account represents the gross receipts of the utility. If at the end of the fiscal year, the payments into the accounts exceed the actual expenses, there obtains a credit in the capital accounts of the patrons.
Section 37-6-20 provides:
 "Revenues of a cooperative for any fiscal year in excess of the amount thereof necessary to defray expenses of the cooperative and of the operation and maintenance of its facilities during such fiscal year; . . . shall be distributed by the cooperative to its members as and in the manner, provided in the By laws, either as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year or by way of general rate reductions, or by combination of such methods."
It has been established policy by the State that capital received by a cooperative in excess of actual operating costs was not subject to the gross receipts tax. Tax that had been paid on the excess was refundable as credit on the next return.
In the assessed year, cooperative computed the margin between actual expenses and the amount paid monthly by its patrons — thus determining the capital credit for each patron's account. It then calculated the amount of tax paid to State as gross receipts tax on the excess. The excess tax paid was refunded by credit to the patrons' next monthly statements. Cooperative then took credit for such refund on its next tax return. State refused to allow such credit, advising that the entire capital paid into the capital account would have to be refunded to the patrons not just the tax paid on such capital.
The position of the State is that the gross receipts tax is just that — a tax upon the total charged for the service delivered. The tax falls due at the time the charge is made. If there is an overcharge in excess of the actual cost of the service, a refund is due in entirety before a credit is allowed against tax previously paid.
The premise for the State's position is that if capital is retained by the cooperative without immediate return, it must constitute a part of "gross receipts" as defined by § 40-21-80
(2) and is thus taxable.
Cooperative's contention is that each monthly billing to patrons represents a capital contribution over and above the estimated cost of operation. At the end of the year, that contribution, together with any excess collection over cost of service, is entered as a capital credit to each patron's account and becomes an obligation of the cooperative to the member. Section 37-6-20 provides that a cooperative shall refund to its members any revenues in excess of its operating expenses, construction, working capital and repayment of indebtedness reserves.
The trial court, after oral hearing and argument of counsel, concluded that the amount paid by the member over and above the actual cost of the service was a contribution to the working capital of the cooperative for which the cooperative credited his personal account. Such capital was an obligation to the member against the assets of the cooperative. The court found that such capital was not a gross receipt within the meaning of the statute and therefore not taxable.
Such finding being accompanied by a presumption of correctness, this court does not find it contrary to the law or evidence. We affirm.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 787