# IN THE OREGON TAX COURT

## LANE ELECTRIC COOPERATIVE, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 2583)

Charles N. Fadeley, Fadeley & Fadeley, Eugene, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered November 23, 1987.

**CARL N. BYERS, Judge.**

Plaintiff appeals defendant's assessments for gross

revenue tax deficiencies under ORS 308.805. Plaintiff is a nonprofit corporation incorporated under ORS Chapter 62. As disclosed by its bylaws, plaintiff's purpose is "to make electric energy available to its members at the lowest cost consistent with sound economy and good management." Members of the cooperative, who are its customers, "own" the cooperative in the sense that, upon dissolution, any assets remaining after payment of debts and liabilities are distributed to the members. If, in the course of its operations, plaintiff receives amounts in excess of its operating costs and expenses, such amounts are considered capital contributions by its patrons. If such capital is not needed or used by the plaintiff, it is eventually returned to its patrons.

■ The relevant portion of ORS 308.805 provides:

"(1) Every association of persons, wholly mutual or cooperative in character, whether incorporated or unincorporated, the principal business of which is the construction, maintenance and operation of an electric transmission and distribution system for the benefit of the members of such association without intent to produce profit in money and which has no other principal business or purpose shall, *in lieu of all other taxes on the transmission and distribution lines,* pay a tax on *all gross revenue* derived from the use or operation of transmission and distribution lines * * *." (Emphasis added.)

The dispute in this case is over the meaning of the term "gross revenue." The specific question presented by plaintiff's appeal is whether funds collected and set aside by plaintiff against a contingent liability which did not arise, resulting in the funds being returned to the patrons, constitutes part of the "gross revenue" of plaintiff which is subject to tax.

In 1976, plaintiff had agreed, along with numerous other electric cooperatives, to participate in the Washington Public Power Supply System (WPPSS) nuclear power plants Nos. 4 and 5. However, the plants were not completed and the proposed project terminated in 1982. As one of the participants, plaintiff anticipated that it might be liable under the participation agreement. Not wanting to incur indebtedness at high interest rates if plaintiff was adjudicated liable, plaintiff's board of directors adopted Resolution 7-82. By that action, the directors increased the rate structure for plaintiff's customers by 10.1 percent (10.4 percent after October 1, 1982).

The revenue created by the rate increase was placed in a separate bank account and held as "deferred revenue." Evidence at the trial indicated that plaintiff committed to its members that such funds would either be used to satisfy any WPPSS liability determined by the courts or, if plaintiff proved to be not liable, it would be returned, with interest, to the members. In 1983, the Washington Supreme Court held that plaintiff was not liable and later that year plaintiff refunded the money, with interest, to its patrons.

As used in the statute, the term "gross revenue" is not so much ambiguous as it may be uncertain. The use in this context is unusual because it does not fall into any of the traditional categories of income, excise or property taxes. The parties have sought to apply concepts from these traditional categories by crossing on the bridge of analogy. Such concepts, however, are applicable only to the extent that sound reasoning and similar legislative purposes would make them so. In general, the court does not find the concepts or the cases cited by the parties as applicable. For example, in *Linnton Plywood Ass'n. v. United States,* 236 F Supp 227, (D Or 1964) and *Linnton Plywood v. Tax Com.,* 241 Or 1, 403 P2d 708 (1965), the central issue was whether and when monies retained by a cooperative would be taxable to the cooperative or its members. Relying upon income tax concepts, the courts focused on the relationship of the members to the cooperative and their respective liabilities for taxation on the earnings of the cooperative. The concepts and the reasoning used to resolve that issue are not applicable to the instant case which does not deal with income tax or earnings.

Likewise, in *Corbett Inves't Co. v. State Tax Com.,* 181 Or 244, 248, 181 P2d 130 (1947), the court had to construe the meaning of the term "gross receipts." In so doing, the court said:

> "If we give to 'gross receipts' its broadest meaning—'everything that comes in'—then an absurd, unreasonable and unjust result may obtain in the administration of the excise tax law."

If there is anything to be inferred from *Corbett,* it is that the purpose and context of the legislation must guide the court in its interpretation of the terms used. There can be no doubt that the gross revenue tax as found in ORS 308.805 is a

substitute for the property tax with its attendant problems of valuation. As defendant's brief notes, prior to 1969 the tax was on "gross earnings from the sale and distribution of electric energy." 1969 Or Laws ch 492, § 1. Whatever "gross earnings" may have meant, we may safely assume that "gross revenue" was meant to be a change. Considering the ordinary meanings of the words, the change from "earnings from the sale" to "revenues derived from the use or operation" would indicate a shift of concern from profit or gain to the level of the use of the property.

■ ■ The term "all gross revenue" does appear to be intended by the legislature in the broadest sense of those words. That is, all money received. Unlike the concept of "gross income" which plaintiff seeks to rely on (Plaintiff's Brief at 9), "gross revenue" is not intended to measure gain. In struggling to sharpen the connotations of the term, the court finds no statutory rules of construction to be of assistance. It is worth noting that the general rule that tax statutes are to be strictly construed against the state and in favor of the taxpayer (3A Sutherland, Statutory Construction, § 66.01, at 287) was rejected by the Oregon Supreme Court in *Parr v. Dept. of Revenue*, 276 Or 113, 553 P2d 1051 (1976).[1]

Plaintiff emphasizes the unusual nature of the potential WPPSS liability and that a special fund was set aside just for that liability. However, as defendant points out, plaintiff's potential liability as a result of its participation in WPPSS was no different from any other liability for which plaintiff may provide either by special fund or in its general budget. Plaintiff is legally "obligated" to its patrons to operate at cost. If it collects more than its expenses in operating costs, such excess funds are considered paid-in capital. As indicated by plaintiff's bylaws:

"All such amounts in excess of operating costs and expenses at the moment of receipt by the Cooperative are

---

[1] In overruling three prior cases which followed the old strict construction rule, the court said:

"We conclude there should not be separate and different rules of statutory construction for ambiguous tax statutes than for other ambiguous statutes passed by the legislature. It is the legislative intent and purpose that this court strives to determine when faced with ambiguous statutory language, and tax statutes should not be construed in favor of either the taxpayer or the state." 276 Or 113, at 117.

received with the understanding that they are furnished by the patrons, members and non-members alike, as capital. The Cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses. * * * All such amounts credited to the capital account of any patron shall have the same status as though they had been paid to the patron in cash in pursuance of a legal obligation to do so and the patron had then furnished the Cooperative corresponding amounts for capital." (Article VII, § 2, Plaintiff's Exhibit 6, at 6.)

The weakness of plaintiff's position is that the tax imposed by ORS 308.805 is imposed before the determination is made whether the money is needed for plaintiff's expenses and operations or will be returned to its patrons. Plaintiff does not dispute that it is subject to tax under ORS 308.805 on all gross revenue received even though part of that revenue may be eventually returned to its patrons as a return of capital. The court sees no difference in the funds which were received and accumulated by plaintiff for its potential WPPSS liability.

Plaintiff contends that the funds were not received. In making this argument, plaintiff relies upon the doctrine of constructive receipt from income tax laws. Plaintiff contends that its legal obligation to its patrons, though self-imposed, removed the funds in question from plaintiff's control.

The doctrine of constructive receipt deals with the question of when income must be deemed received. See Merten's, Law of Federal Income Taxation, § 10.01, at 2. While the court agrees that "revenue" must be received in order to be subject to the gross revenue tax, there is no question that plaintiff received "gross revenue" when it put the money into the bank.[2] The fact that plaintiff determined not to use the funds for anything other than payment of the WPPSS liability or return the money to its patrons is not relevant. The funds were received by plaintiff in the normal course of billing and payment for electricity. The fact that plaintiff did not have unfettered use of the funds does not detract from the fact

---

[2] The parties have stipulated that plaintiff is an accrual basis taxpayer. If plaintiff maintains its accounting records on an accrual basis, gross revenues might be "received" when plaintiff sends out its electric power bills rather than when the payment of those bills is actually received.

that they were received as "revenue." The restrictions imposed were self-imposed restrictions and plaintiff could distribute the funds anytime it wanted. If plaintiff had refunded the money to its patrons right away, it could not escape the fact that it was once part of plaintiff's gross revenue. To find in favor of plaintiff, the court would have to conclude that gross revenue does not include any money which plaintiff returns to its patrons. Even plaintiff does not contend for such a result.

Is it fair to subject plaintiff's WPPSS fund to the tax imposed by ORS 308.805 in that plaintiff is required to pay tax on an "inflated" revenue? Would not this be true only if the tax is designed to relate solely to the level of use of the property? Did the legislature have other considerations in mind? If so, then taxing "all gross revenue," however created, may be entirely within the legislative intent when setting the rate of tax. Whatever the answer to these questions might be, it is clear that if plaintiff had paid the funds to WPPSS or WPPSS bondholders, the revenue would have been subject to tax. To the extent that ORS 308.805 imposes a tax on patrons' refunds, we must accept that it is an inexactness of the measure chosen by the legislature. The Opinion and Order of the Department of Revenue is affirmed. Judgment will be entered in accordance with this opinion. Defendant shall recover its costs.