Argued and submitted September 7, affirmed December 20, 1988

# LANE ELECTRIC COOPERATIVE, INC.,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2583; SC S34820)

765 P2d 1237

Charles N. Fadeley, Eugene, argued the cause and filed the brief for the appellant.

Ted E. Barbera, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, Linde, Campbell, Carson, Jones and Gillette, Justices, and Van Hoomissen, Justice Pro Tempore.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Lane Electric Cooperative, Inc. (LEC), appeals the Tax Court's judgment upholding the Department of Revenue's (Department) assessments for gross revenue tax deficiencies under ORS 308.805[1] on certain money that LEC collected from and subsequently returned to its member-owners. *Lane Electric Cooperative v. Dept. of Rev.*, 10 OTR 501 (1987). The question is whether the Tax Court erred in concluding that the money was subject to the tax on electric cooperative gross revenue. On *de novo* review, ORS 305.445, ORS 19.125(3), we affirm.

LEC is a not-for-profit rural electric cooperative association incorporated under ORS chapter 62. It provides electric utility services to approximately 10,000 customers, mainly in rural Lane County. LEC's principal business is maintaining an electrical distribution system for its members'

---

[1] ORS 308.805 provides:

"(1) Every association of persons, wholly mutual or cooperative in character, whether incorporated on [sic] unincorporated, the principal business of which is the construction, maintenance and operation of an electric transmission and distribution system for the benefit of the members of such association without intent to produce profit in money and which has no other principal business or purpose shall, *in lieu of all other taxes on the transmission and distribution lines,* pay a tax on *all gross revenue derived from the use or operation* of transmission and distribution lines (exclusive of revenues from the leasing of lines to governmental agencies) at the rates prescribed by ORS 308.807. The tax shall not apply to or be in lieu of ad valorem taxation on any property, real or personal, which is not part of the transmission and distribution lines of such association.

"(2) The Department of Revenue, pursuant to ORS 308.505 to 308.655, shall assess for ad valorem taxation all the real and personal property of such associations which is not a part of 'transmission and distribution lines,' as defined in subsection (3) of this section. All other property subject to ad valorem taxation shall be assessed in the manner otherwise provided by law, by the assessor of the county in which such property has a tax situs.

"(3) As used in ORS 308.805 to 308.820:

"(a) 'Transmission and distribution lines' shall include all property that is energized or capable of being energized or intended to be energized, or that supports or is integrated with such property. This includes, but is not limited to, substation equipment, fixtures and framework, poles and the fixtures thereon, conductors, transformers, services, meters, street lighting equipment, easements for rights of way, generating equipment, communication equipment, transmission lines leased to governmental agencies, construction tools, materials and supplies, office furniture and fixtures and office equipment. This shall not include such property as parcels of land, buildings, and merchandise held for resale.

"(b) 'Wire mile' means a single conductor one mile long installed in a line, but not including service drops." (Emphasis added)

benefit. LEC is subject to a tax based on "gross revenues" derived from the use or operation of its transmission and distribution lines. ORS 308.805. LEC is an accrual basis taxpayer, paying taxes based on gross revenue to which it becomes entitled during a tax period rather than on gross revenue actually received during that period.

In 1982, LEC became concerned about its possible financial liability because of its involvement since 1976 in the ill-fated Washington Public Power Supply System (WPPSS) Projects 4 and 5. LEC's Board of Directors adopted a resolution which increased rates about 10 percent to create a WPPSS contingency escrow fund. LEC promised to return any money collected as a result of the increase with interest to its member-owners to the extent that the money was not needed to satisfy any WPPSS liability under the WPPSS participation agreement. LEC's monthly electric bills to its customers included the WPPSS assessment. LEC deposited the assessment revenue in a special WPPSS contingency escrow fund. In 1984, the Washington Supreme Court affirmed that LEC was not liable for WPPSS debt. *See Chemical Bank v. Wash. Pub. Power Supply,* 102 Wash 2d 874, 691 P2d 524 (1984). LEC refunded the money with interest to its members. LEC paid no tax on the money it collected for the WPPSS contingency escrow fund. Department found that LEC should have included the money in LEC's "gross revenue."

LEC appealed to the Tax Court, which held that the legislature intended the term "all gross revenue" in ORS 308.805 to be construed in the broadest sense, *i.e., all* money received. The court found that LEC's potential WPPSS liability was no different from any other liability for which LEC may provide either by special fund or in its general budget. The Tax Court reasoned:

> "The weakness of [LEC's] position is that the tax imposed by ORS 308.805 is imposed before the determination is made whether the money is needed for [LEC's] expenses and operations or will be returned to its patrons. [LEC] does not dispute that it is subject to tax under ORS 308.805 on all gross revenue received even though part of that revenue may be eventually returned to its patrons as a return of capital. The court sees no difference in the funds which were received and accumulated by [LEC] for its potential WPPS liability."

LEC contends that the Tax Court erred in holding that the ORS 308.805 gross revenue tax applied to LEC's WPPSS contingency escrow fund. LEC also argues that it never "received" the money because it had to and did return the money to its member-owners. Department contends that money collected for LEC's WPPSS fund in LEC's regular billings did not differ from other LEC revenue which, with very few exceptions, is taxable under ORS 308.805, whether or not some of it is later returned to member-owners. Department argues that a 1969 amendment to ORS 308.805 changing "all gross earnings" to "all gross revenue" reflected a legislative intent to broaden the scope of ORS 308.805 to be virtually all-inclusive.

Our decision in this case requires an interpretation of the words "all gross revenue" in ORS 308.805 and a determination of whether the money in LEC's WPPSS fund falls within that interpretation.

ORS chapter 308 deals with valuation of various types of property for property tax purposes. ORS 308.805 through 308.820 deal with a specific type of property (electrical distribution systems) owned by a specific class of taxpayers (non-profit electric cooperatives). ORS 308.805 provides a method of taxing such property different from the usual *ad valorem* method based on assessed value. Although the tax is measured by gross revenue, the tax is more properly considered a property tax than an income tax. ORS 308.805 underscores this conclusion because that statute provides that all cooperative property *other* than transmission and distribution lines is subject to normal *ad valorem* taxation. The parties' citations to case law dealing with income, excise or property taxes are not persuasive.[2]

ORS 308.805 reflects a legislative intent to impose an appropriate property tax for the specified cooperative property. That statute taxes cooperative distribution systems based on a percentage of *all* gross revenues generated by ("derived from") such systems. Clearly, *all* gross revenue

---

[2] LEC's reliance on *State v. Pea River Electric Coop.*, 434 So2d 785 (Ala Civ App 1983), is misplaced. The decision in that case apparently is based on established policy in Alabama. No such policy exists in Oregon.

includes, at a minimum, member-owners' obligation to pay their power bills, whether refundable or not.

The legislature tied the tax to gross revenue and underscored its inclusive intent by prefacing that term with (an arguably redundant) "all." No statutory language supports LEC's argument that other adjustments to "all gross revenue" must be allowed. LEC's argument that "all gross revenue" is subject to the adjustment it seeks in this case is defeated by the inclusion of a *single* express statutory exception (for revenue from government leases). A 1969 amendment to ORS 308.805 substituted "all gross revenue" for "gross earnings from the sale and distribution of electricity." 1969 Or Law ch 492, § 1. The new language broadened ORS 308.805 tax liability. With the single statutory exception, "all gross revenue" covers all pre-expenditure revenue.

We agree with the Tax Court that "all gross revenue" encompasses LEC's WPPSS contingency escrow fund. Regardless of LEC's purpose for increasing its rates, its promise to return the additional money if not needed for WPPSS liability, or its actual return of the money to member-owners, the rate increase produced income that was revenue "derived from the use or operation of transmission or distribution lines."

LEC concedes that its WPPSS contingency escrow fund would be taxable if money in the fund had been spent for its intended purpose. LEC argues that its self-imposed commitment to member-owners to spend the fund only to satisfy WPPSS liability and otherwise to return it to member-owners meant that LEC never became entitled to the fund and, therefore, never "received" the income; LEC merely collected and held the money as the member-owners' agent and later returned it to them.

We disagree. LEC "received" gross revenue when it put the WPPSS contingency money in the bank.[3] The fact that the money was earmarked or that it was later returned is simply irrelevant. To find otherwise, we would have to conclude that "all gross revenue" does not include any income LEC receives which LEC later returns to its members.

---

[3] As an accrual basis taxpayer, LEC may have "received" the money when LEC billed its members.

Clearly, that is not what the legislature intended. Further, if LEC had used the money to satisfy any WPPSS liability, the money would have been subject to tax under ORS 308.805.

Finally, LEC argues that requiring it to pay taxes on the WPPSS contingency escrow fund, which it returned unused to its members, would be an "absurd, unreasonable and unjust result." LEC urges us to apply our holding in *Corbett Inves't Co. v. State Tax Com.*, 181 Or 244, 250, 181 P2d 130 (1947), wherein we stated:

> "[W]hen a statute is reasonably susceptible of different construction—one of which leads to a harsh and absurd result—we think the court should adopt the construction sounding more in equity and justice."

The language of ORS 308.805 is not reasonably susceptible of a different construction. We decline to interpret the statute in a manner contrary to its clear language. Further, a tax on "all gross revenue" is not absurd, unreasonable or unjust.

We hold that the money in LEC's WPPSS contingency escrow fund is "gross revenue" received by LEC and that as such it is subject to tax under ORS 308.805.

The decision of the Oregon Tax Court is affirmed.