FOUR COUNTY ELECTRIC MEMBERSHIP CORP. v. POWERS

[96 N.C. App. 417 (1989)]

---

FOUR COUNTY ELECTRIC MEMBERSHIP CORPORATION v. HELEN A. POWERS, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE

No. 8910SC34

(Filed 5 December 1989)

1. Taxation § 26.1 (NCI3d) — electric utility cooperative — franchise tax — exclusion of patronage capital

The superior court correctly granted summary judgment for defendant Secretary of Revenue in an action for a refund

of certain franchise taxes where plaintiff is an electric membership corporation; plaintiff sends bills to its customers for electricity furnished each month; plaintiff allocates part of each payment as patronage capital; patronage capital means total revenues received from monthly billings for electrical service rendered less related operating expenses arising from furnishing such electricity; patronage capital is determined after the close of the fiscal year; and a franchise tax is imposed on the total gross receipts of all corporations engaged in the business of furnishing electricity by N.C.G.S. § 105-116. Although plaintiff contended that patronage capital should not be included as gross receipts, by its very nature a gross receipt is determined at the time of receipt; therefore, events which may occur after consummation of the sale of electricity are not relevant to determining the gross receipt figures. Plaintiff admits that at the time of billing it cannot determine the amount it will ultimately allot to patronage capital, and the applicable statute has no provision for deducting definite but not accrued legal liabilities. The mere fact of a bookkeeping entry in taxpayer's records is insufficient to create a deduction from taxpayer's franchise tax base.

**Am Jur 2d, State and Local Taxation §§ 270, 438.**

**2. Constitutional Law § 20.1 (NCI3d) — electric membership corporation — no deduction for patronage capital — no violation of equal protection**

The denial of a franchise tax deduction for patronage capital to an electric membership corporation was not a violation of equal protection under the Fourteenth Amendment to the United States Constitution or Art. I, § 19, and Art. V, §§ 2 and 3 of the North Carolina Constitution in that investor owned utilities do not pay franchise taxes on funds generated by the sale of stocks or bonds. The issue is whether N.C.G.S. § 105-116 taxes billings for electrical service rendered by cooperatives in the same manner as billings for service rendered by investor owned utilities; each must pay franchise taxes upon its gross receipts, neither can deduct amounts it may record as patronage capital, and neither pays franchise tax on stocks or bonds it may issue. The tax treatment of the sale of stocks and bonds is separate and distinct from that

FOUR COUNTY ELECTRIC MEMBERSHIP CORP. v. POWERS

[96 N.C. App. 417 (1989)]

of taxing the act of furnishing electricity and not linked by statute.

**Am Jur 2d, Constitutional Law § 780; State and Local Taxation § 155.**

APPEAL by plaintiff from order signed 26 August 1988 by *Judge Coy E. Brewer, Jr.* in WAKE County Superior Court. Heard in the Court of Appeals 30 August 1989.

Plaintiff-taxpayer, Four County Electric Membership Corporation ("Four County" or "Taxpayer"), seeks a refund of certain franchise taxes it has paid on the grounds that monies it received as patronage capital should not be included as "gross receipts" for purposes of G.S. sec. 105-116. This statute imposes a franchise tax on the "total gross receipts" of all corporations, profit and nonprofit, which are engaged in the business of furnishing electricity. Plaintiff raised this issue in a hearing before the Secretary of Revenue on 10 July 1986. The Secretary entered a final decision on 20 January 1987 in which she made findings of fact and concluded as a matter of law that there is "no deduction or exemption from the gross receipts tax levied in G.S. sec. 105-116 for patronage capital or operating credits." The Secretary therefore upheld the proposed assessment in question and denied plaintiff's claim for refund.

Plaintiff paid the amount assessed under protest and instituted this action in superior court against the Secretary for a refund pursuant to G.S. sec. 105-267. Upon cross-motions for summary judgment which were both supported by affidavits, exhibits, briefs and arguments of counsel, the trial court held that there was no genuine issue as to any material fact and that the defendant Secretary of Revenue was entitled to judgment as a matter of law. Plaintiff appealed the order to this Court in apt time.

*Crisp, Davis, Schwentker, Page & Currin, by William T. Crisp, II and Cynthia M. Currin, for plaintiff-appellant.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General George W. Boylan, for the defendant-appellee Secretary of Revenue.*

FOUR COUNTY ELECTRIC MEMBERSHIP CORP. v. POWERS

[96 N.C. App. 417 (1989)]

JOHNSON, Judge.

Four County is a nonprofit electric cooperative corporation organized pursuant to Chapter 117 of the North Carolina General Statutes. It also meets the requirements for tax exempt status under section 501(c)(12) of the Internal Revenue Code.

Each month Four County sends bills to its customers (who are also considered to be members of the cooperative) for electricity furnished. From these amounts received, Four County, pursuant to its bylaws, allocates on its books and records part of each customer's payment as "patronage capital." Four County has stipulated that the term "patronage capital" means "total revenues received by Four County Electric Membership Corporation from monthly billings to its members for electrical service rendered less related operating expenses arising from furnishing such electricity, including interest payments upon any debt capital used in providing electric service as well as depreciation upon operating facilities and equipment." The Taxpayer has also stipulated that patronage capital is determined after the close of its fiscal year, and that at the time of rendering bills, it cannot determine the amount of a bill which will go to patronage capital.

Four County's bylaws provide that the Board of Directors has, at its discretion, upon the death of a patron, the power to retire that patron's capital, "PROVIDED, however, that the financial condition of the Cooperative will not be impaired thereby." The Taxpayer addressed this issue in greater detail in its "General Policy No. 422," which states in part that the Cooperative does not

> commit itself to retire all or any portion of a deceased member's capital credits, except upon determination by the Board of Directors, in each and every case, that the financial condition of the Cooperative will not thereby be impaired . . . ; nor shall the inauguration of this Policy in any way presume its permanent continuance, the Board of Directors, pursuant to its powers and responsibilities by law and the Bylaws prescribed, retaining the prerogative to rescind it altogether or to amend it on the basis of generally applicable principles at any time.

As to general retirement of patronage capital, Four County states in its notice of Capital Credit Assignments to its patrons that "[t]he Cooperative is currently striving to make a general

**FOUR COUNTY ELECTRIC MEMBERSHIP CORP. v. POWERS**

[96 N.C. App. 417 (1989)]

retirement of Capital Credits on a 20-year rotation basis as long as it is economically sound to do so."

[1] Four County contends on appeal that it should be allowed to exclude from its "gross receipts" that amount from each patron's monthly payment which it credits on its books to patronage capital. Taxpayer makes a "subordinate alternative" argument that it should at least be allowed to exclude from gross receipts the amount of patronage capital it actually returns to patrons.

We observe at the outset that the franchise tax is not an income tax, but rather is a tax imposed on corporations for the privilege of engaging in business in this state. G.S. sec. 105-114. This tax varies according to the nature, extent and magnitude of the business transacted in this state by a corporation. *Telephone Co. v. Clayton, Comr. of Revenue*, 266 N.C. 687, 147 S.E.2d 195 (1966). Our Supreme Court has also stated that it "depends upon the amount of business transacted by the corporation." *Worth v. Railroad*, 89 N.C. 301, 306 (1883).

This Court and our Supreme Court have analyzed the meaning of the term "gross receipts" for purposes of franchise taxation of telephone companies as governed by G.S. sec. 105-120. *Telephone Co. v. Clayton, Comr. of Revenue, supra; In re Proposed Assessment of Carolina Telephone*, 81 N.C. App. 240, 344 S.E.2d 46, *disc. rev. denied*, 318 N.C. 283, 347 S.E.2d 465 (1986). G.S. sec. 105-120 defines "gross receipts" for purposes of telephone company franchise taxes as "all rentals, other similar charges, and all tolls received from business." G.S. sec. 105-120(b). Unlike G.S. sec. 105-120, G.S. sec. 105-116, which governs franchise taxation of public service companies and is applicable to the instant case, does not contain descriptive language to aid in defining the term "gross receipts." It states simply that the taxpayer is to make a quarterly report stating, in part, the "total gross receipts . . . from such business." G.S. sec. 105-116(a)(1) and (2). G.S. sec. 105-116(b) does refer to certain gross receipts to be deducted from taxable total gross receipts. No mention is made of an offset for patronage capital. We also find no reference to such a deduction in the Chapter 117 of the General Statutes which governs electric membership corporations.

Taxpayer's business is that of providing electric service to its patron customers. The monies generated by the monthly charges billed for electric service constitute its "gross receipts" and they

are indicative of the amount of business transacted by Four County. The "patronage capital" which Taxpayer wishes to exclude from its gross receipts is generated from monthly charges to customers.

"Gross receipts" is defined as "the *total amount* of money . . . *received* from selling property or from performing services." Black's law Dictionary 633 (5th ed. 1979) (citation omitted) (emphasis added). Important to this definition is the concept that it is the character of funds at the time of receipt that matters. Disbursements made subsequent to this taxable event from the total amount received do not diminish the amount of gross receipts. *See New Cornelia Cooperative Mercantile Co. v. Arizona State Tax Com'n.,* 23 Ariz. App. 324, 533 P.2d 84 (1975); *Tyler Lumber Co. v. Logan,* 293 Minn. 1, 195 N.W.2d 818 (1972).

In the case before us, Four County admits that at the time of billing, it cannot determine the amount it will ultimately allot to patronage capital. It is noteworthy that the monthly bills sent out by Four County simply state a total amount due for "electric service." The determination of patronage capital is due in part to Taxpayer's analysis of events occurring later in its fiscal year. By its very nature, a gross receipt is determined at the time of receipt. Therefore, events which may occur after consummation of the sale of electricity are not relevant to determining the gross receipts figure. *Id.*

In concluding that amounts designated by Four County on its books as "patronage capital" are part of gross receipts, we are guided by the reasoning of our Supreme Court in *Realty Corp. v. Coble, Sec. of Revenue,* 291 N.C. 608, 231 S.E.2d 656 (1977). In *Realty Corp.,* the Court rejected the argument of the taxpayer (who elected to use the installment method of accounting) that it should be allowed to deduct future potential state and federal income tax liability from its franchise tax base under G.S. sec. 105-122(b). In so doing, the Court set out principles which are relevant here. First, even though a taxpayer may be using correct accounting practices, the statute itself must control the accounting methods to be used for computing the franchise tax base. Second, the Court found that the taxes the taxpayer wished to deduct were not deductible since they were not "definite and accrued legal liabilities" as required by applicable G.S. sec. 105-122. In the instant case, the applicable statute has no provision for deducting "definite and accrued legal liabilities." We are therefore especially

FOUR COUNTY ELECTRIC MEMBERSHIP CORP. v. POWERS

[96 N.C. App. 417 (1989)]

reluctant to allow Four County to deduct patronage capital when it is not under any pre-existing legal duty to return any set amount of funds to its patrons at the time it receives monthly payments from them. Although it claims that patronage capital is credited to the patron's account "at the moment of receipt," Taxpayer has stipulated that at the time of rendering a bill, it cannot determine what percentage of the bill will ultimately go to patronage capital. It is also important that, as quoted above, Four County's own bylaws give it wide discretion in returning patronage capital. Therefore, pursuant to *Realty Corp.*, we must conclude that the mere fact of a bookkeeping entry in Taxpayer's records is insufficient under these facts to create a deduction from Taxpayer's franchise tax base.

We are also unpersuaded by two consolidated cases from Alabama which Four County cites to us, *Alabama v. Pea River Electric Cooperative*, 434 So.2d 785 (Ala. Civ. App. 1983), *cert. denied*, No. 82-693 (Ala. filed 1 July 1983). The Alabama Court appeared to be influenced by various past rulings of the Alabama Commissioner of Revenue which indicated that capital received by a cooperative in excess of its operating costs was not subject to the gross receipts tax. *Id.* We are unaware of revenue rulings to that effect in North Carolina. We also note that the *Pea River* decision was rejected by the Oregon Supreme Court in *Lane Electric Cooperative v. Department of Revenue*, 307 Or. 226, 765 P.2d 1237 (1988). That court, in finding the taxpayer's reliance on *Pea River* misplaced, stated in a footnote that "[t]he decision in [*Pea River*] apparently is based on established policy in Alabama. No such policy exists in Oregon." 307 Or. at 203, 765 P.2d at 1239, n.2. We also know of no such policy in North Carolina. Indeed, in North Carolina, the construction of a revenue act by the Secretary of Revenue, although not binding, will be given due consideration by the court. *Realty Corp., supra.* In the instant case the Secretary determined that patronage capital is not excludable from "gross receipts" and we must accord this determination due consideration. Second, the Alabama Court in *Pea River* also relied on a state statute which mandates that Alabama cooperatives *shall* distribute to members revenues in excess of amounts needed for operation and maintenance of the cooperative. North Carolina has no such statute and, in our view, Four County's bylaws afford it too much discretion to create a pre-existing legal obligation. *Boyce v. McMahan,*

285 N.C. 730, 208 S.E.2d 692 (1974); *MCB Limited v. McGowan*, 86 N.C. App. 607, 359 S.E.2d 50 (1987).

We turn now to Taxpayer's alternative argument that it should be allowed to deduct patronage capital actually repaid from its franchise tax base. Consistent with our previous analysis, we view this repayment as merely a disbursement from original gross receipts received from the sale of electricity which does not alter the amount of gross receipts. We therefore reject Taxpayer's alternative argument.

[2] Finally, we address Four County's contention that denying it a deduction for patronage capital while investor-owned utilities do not pay franchise taxes on funds generated by the sale of stocks or bonds is a violation of equal protection of the laws under the Fourteenth Amendment to the United States Constitution, of Article I, Section 19 of the North Carolina Constitution, and also a violation of Article V, Sections 2 and 3 of the North Carolina Constitution, which require that taxes be levied by "uniform rule."

In *Realty Corp., supra*, at 617, 231 S.E.2d at 662, our Supreme Court stated the following:

" '[T]he requirements of "uniformity," "equal protection," and "due process," are, for all practical purposes, the same under both the State and Federal Constitutions.' " A tax is uniform when it imposes an equal tax burden upon all members of a particular class. *Hajoca Corp. v. Clayton, Comr. of Revenue*, [277 N.C. 560, 568, 178 S.E.2d 481, 486 (1971)]. As long as a classification is not arbitrary or capricious, but rather founded upon a rational basis, the distinction will be upheld by the Court. (Citations omitted.)

We hold that the application of G.S. sec. 105-116 to Taxpayer does not violate its constitutional rights. We find Four County's comparison of the tax treatment of the sale of stocks and bonds by investor-owned utilities to be faulty. The issue is whether G.S. sec. 105-116 taxes billings for electrical service rendered by cooperatives in the same manner as billings for service rendered by investor-owned utilities. Each must pay franchise taxes upon its gross receipts and neither can deduct amounts it may record as patronage capital. Also, neither pays franchise tax on stocks or bonds it may issue.

**FOUR COUNTY ELECTRIC MEMBERSHIP CORP. v. POWERS**

[96 N.C. App. 417 (1989)]

The tax treatment of the sale of stocks and bonds is separate and distinct from that of taxing the act of furnishing electricity and not linked by statute. Taxpayer's complaint is that it has formed itself under section 501(c)(12) of the federal Internal Revenue Code, and therefore is apparently restricted from selling stocks and bonds. This federal provision is, however, unrelated to our franchise tax statute.

We again find that principles of *Realty Corp., supra,* are instructive. The taxpayer in *Realty Corp.* alleged denial of equal protection because as a "cash basis" taxpayer it could not claim certain deductions available to an "accrual basis" taxpayer. In finding no equal protection violation, the Court observed that plaintiff had "voluntarily elected to place itself in the classification about which it now complains; to wit, a cash-basis taxpayer reporting its income under the installment method." 291 N.C. at 618, 231 S.E.2d at 662. Similarly, in the instant case, Four County has elected to operate as a federal tax-exempt entity which cannot issue stocks and bonds. As in *Realty Corp., supra,* this election does not, however, create a viable equal protection issue for Taxpayer.

Different treatment under the franchise statute of patronage capital and funds received from the sale of stocks and bonds is based on a rational reason. *Snyder v. Maxwell, Comr. of Revenue,* 217 N.C. 617, 9 S.E.2d 19 (1940). Unlike funds received from the sale of stocks and bonds, monies ultimately termed patronage capital by Four County are merely part of the gross receipts received for the sale of electricity when billings are rendered. Patronage capital ultimately owed to Taxpayer's members is at the time of receipt uncertain as to both amount and fact of liability. Differing treatment for such unrelated activities is certainly rational.

Affirmed.

Judges EAGLES and GREENE concur.