PIONEER TELEPHONE
COOPERATIVE INC.,
Appellant,

v.

OKLAHOMA TAX COMMISSION,
Appellee.

No. 73154.

Supreme Court of Oklahoma.

May 26, 1992.

SUMMERS, Justice.

The State of Oklahoma charges a sales tax on service to telephone users, which tax is billed and collected monthly as the service is used. The question is this: when a telephone cooperative charges its customers at a rate later determined to be in excess of its costs, can the cooperative get a refund of sales taxes collected and remitted to the Tax Commission on the excess?

Pioneer Telephone Cooperative, Inc. is one of six telephone cooperatives regulated by the Oklahoma Corporation Commission. Pioneer furnishes services to members in forty-six different telephone exchanges in western and northwestern Oklahoma, and charges its members according to the rate set by the Oklahoma Corporation Commission. It is a non-profit corporation.

Pioneer's Commission-approved rate is determined according to its estimate of what future costs will be incurred in delivering telephone service. Because this *is* an estimate, quite often there will be excess money (or a "margin") when the cooperative performs its yearly accounting. Instead of paying back each of its members in cash, the cooperative credits each customer with a pro-rata share of the margin in a "capital account".

According to the by-laws of Pioneer, the excess money is deemed to have been paid back to the members in cash, and then "loaned" back to Pioneer as capital. Each member of Pioneer has a capital account with the cooperative. Members cannot withdraw funds from their account. If a member moves and is no longer a member of the cooperative that member does not receive the money in his or her account. Pioneer will usually pay to the estates of deceased members the amount which had accumulated in that member's account. If the margin is deemed to be excessive by Pioneer, Pioneer may pay all members an amount from this excess to the extent deemed possible by Pioneer on a pro-rata basis.

In 1987 Pioneer filed for a refund of the sales tax collected on those amounts charged its members in excess of the actual costs of delivering the telephone service. For the years 1984, 1985 and 1986 Pioneer sought a combined sales tax refund of approximately $220,000.

The Tax Commission saw it otherwise. Relying on 68 O.S.1981 §§ 1354 and 1352(F), it determined that the "gross proceeds" of telephone service sales are subject to the sales tax, and that "gross proceeds" specifically included the amounts credited by Pioneer to its member's capital accounts after the close of a tax year. In Order No. 89-04-20-07 the Tax Commission adopted the findings and conclusions of the administrative law judge and denied the refund. Pioneer appealed. The Court of Appeals relied on the rationale of a similar case decided in Alabama and reversed. We have granted certiorari. The question is one not previously addressed by this Court.

In support of its position Pioneer argued (and successfully, in the Court of Appeals) that the Alabama case of *State v. Pea River Electric Cooperative, et al.*, 434 So.2d 785 (Ala.App.1983), should be followed in this jurisdiction. The facts and issues involved in *Pea River* were almost identical to those here, excepting that Pea River furnished electricity instead of telephone service. The court there held that the tax on the amounts in excess of actual operating costs were refundable as credit on the next return. *Id.* at 786.

Alabama, however, had a statute[1] providing that any excess payments to the cooperative should be distributed to the cooperative members by either rate reductions or "as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year ..." *Id.* Oklahoma has no such statute.

The Alabama court also stated that it was established Alabama policy to exclude such "margins" from the gross receipts. *Id.* Pioneer points to *Stewart v. Oklahoma Tax Commission*, 524 P.2d 935 (Okla.1974), to show that Oklahoma has a similar policy. *Stewart* involved the overpayment of State estate taxes. We held there that the taxpayer was entitled to a refund of the overpayment. However, the reasoning behind *Stewart's* holding is quite inapplicable to any of the issues under consideration today. Under Oklahoma law, estate tax was computed in accordance with Federal Estate Tax.[2] By the time the Federal Estate Taxes were computed, the deadline for requesting a refund for overpaid State estate tax had passed. The only policy established in the *Stewart* case concerned the time limits within which an application for estate tax refunds could be filed. The question here is not whether Pioneer has timely filed for a refund, but whether it is entitled to a refund at all. We fail to find any precedential application in the *Stewart* holding.

With regard to sales tax collected by cooperatives on sales exceeding costs, other states faced with that factual scenario, but without the statutes or policies of Alabama, have gone the other way. *Lane Electric Cooperative, Inc. v. Department of Revenue*, 307 Or. 226, 765 P.2d 1237 (1988); *New Cornelia Cooperative Mercantile Company v. Arizona State Tax Commission*, 23 Ariz.App. 324, 533 P.2d 84 (1975), *Four County Electric Membership Corporation v. Powers*, 96 N.C.App. 417, 386 S.E.2d 107 (1989); *Tyler Lumber Co. v. Logan*, 293 Minn. 1, 195 N.W.2d 818 (1972). Courts in these states have held that the "margins" created by overcharging are part of the "gross receipts" and the taxes thereon are non-refundable. In these cases the courts relied on the statutes of their states which defined "gross proceeds" or "gross receipts".

Section 1354 of our Title 68 reads in pertinent part as follows:

There is hereby levied upon all sales, not otherwise exempted in this article, an excise tax ... on the *gross proceeds* of each of the following:

(D) Service by telephone or telegraph companies to subscribers or users, including transmission of messages, whether local or long distance, and all

---

1. Ala.Code § 37-6-20 (1975).

2. Title 68, O.S.1971 § 804, required the estate tax due the State of Oklahoma be computed in accordance with 26 U.S.C. 1964 ed. § 2011, wherein the estate is given credit toward payment of its Federal Estate Taxes of 80% of the estate tax paid to the State. *Stewart* at 936.

services and rental charges in connection with transmission of any message; (Emphasis added).

■ There is no dispute that Pioneer, during the period at issue, made sales of telephone service which were subject to sales tax under the Sales Tax Code. Witnesses for Pioneer testified that Pioneer charged its members pursuant to the rates set by the Oklahoma Corporation Commission for telephone service and collected, reported and remitted sales tax based on those rates. The dispute is whether the amounts determined by Pioneer at the close of its year to be in excess of the amounts necessary to provide telephone service are gross proceeds (or gross receipts) from the sale of telephone service which are subject to sales tax.

Pioneer argues that the gross receipts for calculating sales taxes are equal to the cost to Pioneer of delivering the service, calculated at the end-of-year accounting. The Tax Commission argues that the gross receipts are the cost to the customer-member at the time the customer pays for the services.

Title 68 section 1352(F) defines "gross receipts" as follows:

(F) *"Gross receipts" or "gross proceeds" means the total amount of consideration for the sale of any tangible personal property or service taxable under this article, whether the consideration is in money or otherwise. "Gross receipts" or "gross proceeds" shall include,* but not be limited to:

(1) Cash paid, and

(2) Any amount for which payment is charged, deferred, or otherwise to made in the future, regardless of the time or manner of payment, and

(3) *Any amount for which credit* or a discount *is allowed by the vendor,* and

(4) Any amount of deposit paid for transfer of possession, and

(5) Any value of a trade-in or other property accepted by the vendor as consideration....

*There shall not be any deduction from the gross receipts or gross proceeds on amount of cost of the* property sold, labor *service performed,* interest paid, or losses, *or of any expenses whatsoever,* whether or not the tangible personal property sold was produced, constructed, fabricated, processed, or otherwise assembled for or at the request of the consumer as part of the sale. (Emphasis Added)

Section 1352(F) defines "gross receipts" as "the total amount of consideration for the sale of any .... service taxable under this article, whether the consideration is in money or otherwise." The statute states that gross receipts includes the consideration for the sale of any service and that the cost of the service shall not be deducted from the gross receipts. It specifically includes any amount for which a credit may be allowed by the seller.

■ The taxable event is the sale itself, and not the cost of operations determined by an accounting method at a future date. The taxable event, the sale of the service, occurs when the cooperative member receives the service and incurs the obligation to pay consideration, the monthly charge, for telephone service. A "sale" occurs by "[t]he furnishing or rendering of services taxable under this article." 68 O.S.Supp.1984 and Supp.1985 at § 1352(L)(4). Oklahoma case law supports this conclusion. See, for example, *Philips v. Oklahoma Tax Commission,* 577 P.2d 1278, 1282 (Okla.1978), ("In discussing sales tax, it must be emphasized that sales tax is imposed upon the sale itself...."); *Liberty Steel Co. v. Oklahoma Tax Commission,* 554 P.2d 8, 10 (Okla.1976), ("A sales tax, as opposed to a use tax, is imposed on the sale itself and is collectable from the seller."). *See also Four County Electric Membership Corporation v. Powers,* 96 N.C.App. 417, 386 S.E.2d 107, 110 (1989) ("By its very nature, a gross receipt is determined at the time of receipt. Therefore, events which may occur after consummation of the sale of electricity are not relevant to determining the gross receipts figure.")

■ Our conclusion is also consistent with a plain meaning of the term "gross

receipts". In *County of Sacramento v. Pacific Gas and Electric Co.*, 193 Cal. App.3d 300, 238 Cal.Rptr. 305 (3 Dist.1987), the court utilized the "plain meaning" rule to define gross receipts. "In its ordinary usage as a financial term, gross means 'an overall total exclusive of deductions,' ... Thus gross receipts refers to the total amount of money or the value of other considerations received from selling property or performing services." *Id.* 238 Cal. Rptr. at 311. Even if one were to look no further than to the word "gross", its plain meaning as "without deductions" is clear in this context.[3]

We conclude that a telephone cooperative is not entitled to a refund of sales taxes collected and remitted pursuant to rates set by the Corporation Commission, even when a later accounting determines that the charges exceeded the actual costs incurred by the cooperative.

The Opinion of the Court of Appeals is vacated and Order No. 89–04–20–07 of the Oklahoma Tax Commission is affirmed.

OPALA, C.J., and LAVENDER, SIMMS and ALMA WILSON JJ., concur.

KAUGER, J., concurs in result.

HARGRAVE, J., dissents.

HODGES, V.C.J., not participating.

---

**3.** The California appellate court expressed a note of caution in applying the "plain meaning" rule: "the plain meaning rule does not oblige the court to adhere to the narrowest possible literal reading of the phrase despite the absurdity of the result or manifest proof of contrary legislative intent.... Consequently, even the meaning of a statutory phrase as ordinary as 'gross receipts' may be expanded or contracted in order to fulfill the objective of the entire statutory scheme." *Id.* 238 Cal.Rptr. at 312. (Citation omitted).