815 P.2d 175 (1991)
KAY ELECTRIC COOPERATIVE, Appellant,
v.
STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Appellee.
In Matter of SALES TAX PROTEST OF KAY ELECTRIC COOPERATIVE.
KAY ELECTRIC COOPERATIVE, Appellant,
v.
OKLAHOMA TAX COMMISSION, Appellee.
COTTON ELECTRIC COOPERATIVE, INC., Appellant,
v.
STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Appellee.
Nos. 74,076, 74,198 and 73,942.
Supreme Court of Oklahoma.
July 9, 1991.
Derryberry, Quigley, Parrish, Solomon & Blankenship by Larry Derryberry, Patrick D. Shore, and Eric Mitts, Oklahoma City, for appellant Kay Elec. Co-op.
J.W. Doolin, Lawton, for appellant Cotton Elec. Co-op., Inc.
Oklahoma Tax Com'n by Joe Mark Elkouri, Gen. Counsel, and Marjorie Welch, Asst. Gen. Counsel, Oklahoma City, for appellee.
The City of Norman by Jeff F. Raley, City Atty., Norman, for amicus curiae The City of Norman and as authorized by other amici curiae.
*176 HODGES, Vice Chief Justice.
On March 20, 1987, the Oklahoma Tax Commission (Commission) adopted Regulation 13-62 requiring rural electric cooperatives to collect, report and remit state, city and county taxes on the sale of electricity. As a result, the appellants, Kay Electric Cooperative and Cotton Electric Cooperative (collectively, coops), collected and remitted sales tax to the Commission. The tax was paid under protest. The coops then separately filed for refunds. The Commission denied both requests for refunds based on the Administrative Law Judge's Findings, Conclusions and Recommendations. Both coops appealed from *177 those denials. The cases were consolidated on appeal.
In Branch Trucking Co. v. Oklahoma Tax Comm'n, 801 P.2d 686 (Okla. 1990), this Court addressed the question of whether rural electric cooperatives were exempt from collecting, reporting, and remitting sales tax. Branch was a challenge to the validity of the Commission's order under Okla. Stat. tit. 68, § 225(f) (1981). Therefore, the issue of whether the tax should be refunded was not addressed.
The only difference in the present cases and Branch is that the present appeal is from the denials of requests for refunds. The Commission, after this Court requested additional briefs, argues that Branch should only be given prospective effect. We disagree.
The general rule is that a decision of a court will be given retrospective application. An exception to that rule was set out in Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and adopted by this Court. See Griggs v. State, 702 P.2d 1017, 1020-21 (Okla. 1985). The three factors for determining if a decision should be given only prospective application are:
First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively."
Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355-56 (citations omitted); Griggs 702 P.2d at 1020.
In Branch, there was no new pronouncement overruling clear past precedent on which the litigants relied. In fact, the Commission was bound by two early 1900 district court cases. See Alfalfa Elec. Coop. v. Oklahoma Tax Comm'n, No. 105,766, slip op. (D.Ct.Okla. Jan. 29, 1943); Cotton Elec. Coop. v. Oklahoma Tax Comm'n, No. 105,778, slip op. (D.Ct.Okla. Aug. 11, 1942). Further, Branch was not a case of first impression. It has long been the rule that a party to an action is bound by stare decisis and that the Attorney General cannot overrule a court of competent jurisdiction.
The history and purpose of the rule favor retroactive application. As just stated, the Commission was bound by two district court cases from which it did not appeal. It could not collaterally attack those decisions by relying on the Attorney General's opinion.
Likewise, there is little inequity in imposing the Branch decision retroactively. The coops paid the taxes under protest. The Commission was fully aware of the possibility that the taxes would have to be refunded. While the state argues that it will endure hardship if Branch is applied retrospectively, it does not argue that it would be unfair.
Balancing these three factors, the scales tilt on the side of the general rule. The Branch decision should be applied retroactively to requests for refunds of state sales taxes paid under protest. Even if the balance was shifted, this Court still must order the refunds.
The Legislature has provided that taxes which were erroneously or illegally assessed by the Commission must be refunded. Okla. Stat. tit. 68, § 225(c) (1981). Section 225(c) states: "If upon final determination of the appeal the order assessing such tax, penalties, and interest is reversed or modified and it is determined that said tax or part thereof was erroneously or illegally assessed, said amounts so paid by the taxpayer, together with the interest thereon at the rate of three percent (3%) per annum, shall be refunded to the taxpayer by the Tax Commission." Having *178 found that the taxes were illegally collected, the Commission must refund the taxes.
The Commission relies on First of McAlester Corp. v. Oklahoma Tax Comm'n, 709 P.2d 1026 (Okla. 1985), and Sun Oil Co. v. Oklahoma Tax Comm'n, 620 P.2d 896 (Okla. 1981), for the proposition that the refunds should be denied. Those two cases are distinguishable from the present case because the taxes in those cases were not paid under protest. Section 206 applies only to taxes paid under protest. We express no opinion on whether Branch applies to requests for refunds of taxes which were not paid under protest because that issue is not before us.
Some municipalities have filed an amicus curiae brief arguing, among other things, that Branch should not be applied to them because they were not parties to that case. Likewise, they are not parties in the present appeal or in the hearings below. This Court's opinion in the present appeal is only binding as the law of the case on the entities which are parties to the actions. See Fry v. Pennsylvania Mut. Life Ins. Co., 195 Okl. 507, 159 P.2d 550 (1945).
ORDER OF TAX COMMISSION REVERSED. CAUSE REMANDED WITH INSTRUCTIONS TO REFUND PROTESTED STATE SALES TAXES.
LAVENDER, SIMMS and HARGRAVE, JJ., and BACON, S.J., concur.
OPALA, C.J., and ALMA WILSON, KAUGER and SUMMERS, JJ., concur in part and dissent in part.
BACON, S.J., sitting in place of DOOLIN, J., who disqualified.
SUMMERS, Justice, concurring in part and dissenting in part.
The majority orders a refund of only the state sales taxes and declines to determine whether similar municipal and county taxes are also subject to refund. Because of the inequity of requiring a refund from municipalities and counties as hereinafter developed I would decline to make Branch Trucking Company v. Oklahoma Tax Commission, 801 P.2d 686 (Okla. 1990) retroactive as to counties and cities, and thus end this controversy as to those entities.

I. The Tax Commission's Obligation to Refund.
Effective November 1, 1989, collected sales taxes are deposited into the sales tax remitting account and remitted to the counties and municipalities on a monthly basis. 68 O.S.Supp. 1989 §§ 1373 and 1374. These statutes clearly require remitting the collected tax to the appropriate counties and municipalities, but contain no provision for preserving sales taxes paid under protest for eventual refunds to taxpayers. The State Treasurer has apparently distributed the revenues from the unauthorized sales tax to the respective counties and municipalities notwithstanding the protests. According to the Tax Commission these funds were appropriated and spent by the entities involved.
The taxpayers[1] paid money to the Tax Commission under protest. A taxpayer may protest an assessment. 68 O.S.Supp. 1987 § 221. The Tax Commission issues an order adjudicating the protest. Id. at § 221(g). That order is appealable to this court. 68 O.S.Supp. 1987 § 221(g) and 68 O.S. 1981 § 225. When in the course of an appeal of a protest this court determines that the taxes paid under protest were "erroneously or illegally assessed"  then "said amounts so paid by the taxpayer, together with the interest thereon at the rate of three percent (3%) per annum, shall be refunded to the taxpayer by the Tax Commission." 68 O.S. 1981 § 225(c). (Emphasis Added). Additionally, Article 2 of *179 Title 68 provides the "Uniform Tax Procedure" for the Tax Commission, and therein is found the requirement that the Tax Commission return to the taxpayer deposited money or securities in excess of the taxpayer's liability when such was paid by the taxpayer to secure compliance with any State tax law. 68 O.S. 1981 § 211. Section 225 imposes a duty on the Tax Commission to repay all of the money paid under protest  and in this controversy that amount includes amounts collected for counties and municipalities. Sections 211, 221, and 225 show that taxpayers of this State have a statutory expectation for the return of all money paid under protest.[2]
This State has long required prompt payment of a tax as a condition precedent for testing the validity of the tax, and the fundamental fairness of such a requirement rests on the taxpayer's ability to eventually receive a refund of invalid taxes. See, Exchange Oil Co. v. State, 80 Okla. 52, 193 P. 999, 1001-1002 (1920). More recently we have said: "The State's integrity requires that when a statutory tax refund is due, it must be paid, and procedures must be found to accomplish that purpose. Art. 2, § 6, Oklahoma Constitution." Continental Oil Co. v. Oklahoma Tax Commission, 494 P.2d 650, 653 (Okla. 1972). In Continental Oil Co. v. State Bd. of Equalization, 494 P.2d 645 (Okla. 1972), we observed that "The authorization to pay under protest would have no meaning unless it is possible for the taxpayer to derive a benefit therefrom." Id. at 647. The statutorily required benefit is a refund when a taxpayer is successful with a protest. Clearly, the state sales taxes paid under protest must be returned to the taxpayers.
The Tax Commission collects sales taxes on behalf of counties and municipalities pursuant to contractual agreements authorized by state law. 68 O.S.Supp. 1983 § 1371 (counties) and 68 O.S.Supp. 1986 § 2702 (municipalities). Contracts with counties must provide "for the assessment, collection, and enforcement of the sales tax, ... in the same manner as the administration, collection, and enforcement of the state sales tax by the Oklahoma Tax Commission." 68 O.S.Supp. 1983 § 1371. (Emphasis added). Similar language is found in § 2702. These statutes require administering county and municipal sales taxes in the same manner as state taxes. Thus, under the combined statutory authority of §§ 211, 221, 225, 1371, and 2702, city and municipal sales taxes paid under protest and collected by the Tax Commission are to be refunded by the Tax Commission to the taxpayer upon completion of a successful protest. However, the refund of the municipal and county sales taxes, as explained in part III herein, would be inequitable.

II. Misapplication of the Refund Statute.
The Tax Commission argues that the municipal and county sales taxes cannot be refunded without putting some cities into bankruptcy, drastically reducing sales tax allocations to other cities and thereby causing a reduction of services necessary for the health and safety of those residents. This argument is based upon the amount of current sales tax revenues and the following language of § 225 that identifies the source of tax refunds:
"(d) Such refunds and interest thereon shall be paid by the Tax Commission out of monies in the Tax Commission clearing account from subsequent collections *180 from the same source as the original tax assessment, provided that in the event there are insufficient funds for refunds from subsequent collections from the same source, the refund shall be paid by the Tax Commission from monies appropriated by the Legislature to the special refund reserve account for such purposes as hereinafter provided. There is hereby created within the official depository of the State Treasury an agency special account for the Tax Commission for the purpose of making such refunds as may be required under this section, not otherwise provided. This account shall consist of monies appropriated by the Legislature for the purpose of making refunds under this section." 68 O.S.Supp. 1989 § 225(d).
This statute requires refunds to be paid from the Tax Commission clearing account. If that account is insufficient to pay the refund then subsequent tax collections from the same source shall pay it. If subsequent collections are insufficient then the refund is paid from an appropriation by the Legislature.
Section 225(d) cannot apply to tax refunds from municipalities and counties for the following reasons: (1.) The statute would unconstitutionally use state revenues on the behalf of counties and municipalities.[3] (2.) A "judgment" in a Tax Commission protest is against the Tax Commission and is, according to § 225 of Title 68, paid by the Tax Commission, at least until the majority's pronouncement today. (3.) Judgments against counties and municipalities are paid from a sinking fund or taxes levied to pay the judgment.[4] Section 225 does not give the Tax Commission authority to withhold current sales tax revenues from the counties and municipalities involved.
The majority opinion requires naming counties and municipalities as parties to a Tax Commission protest when revenues from those sources are at issue. The tax statutes do not require naming the political subdivisions as parties and the result of such a requirement conflicts with the principle that tax remedies are liberal in giving the taxpayer an opportunity for a refund when the taxpayer complies with the tax procedure and taxes are paid under protest. Exchange Oil Co. v. State, 193 P. at 1002.
The § 221 protest is a special statutory proceeding, as opposed to a proceeding before a court of record, and as such, does not result in a true "judgment" against the taxpayer, although it may have the effect of a judgment. See, Excise Bd. of Pottawatomie County v. French, 201 Okla. 380, 206 P.2d 203 (1949), (payment of a worker's compensation claim by county was not an action in a court of record for a money judgment against the county) and 68 O.S.Supp. 1989 § 221(h), (properly filed and docketed final assessment has same force as judgment of district court). Because there is no provision in § 225 for creating an administrative award or "judgment" against named political subdivisions, such as counties and cities, I believe that requiring their inclusion in the administrative process without Legislative action violates 62 O.S. 1981 § 365.1. This statute prohibits money judgments against counties and municipalities unless such occur in a court of record. See also, Excise Bd. of Pottawatomie *181 County v. French, supra, and the explanation that the Legislature may require a county to pay a worker's compensation "award" arising from an administrative proceeding.

III. Resolution of the Controversy.
Clearly, the county and municipal taxes involved are without legal authority. Rural electric cooperatives are exempt from state, county and municipal sales taxes. See, 18 O.S. 1981 § 437.25 and Branch, supra. The refund of all taxes, including county and municipal taxes, is predicated upon a retroactive application of Branch. I agree with the majority opinion and would apply Branch retroactively as to the State sales taxes. Retroactive application provides a remedy for recovery of unauthorized State sales taxes paid under protest, and the State has made no showing that retroactive application would curtail the delivery of governmental services. Retroactive application of Branch to counties and municipalities is a different matter.
Regurgitation of literally millions of dollars by counties and municipalities is no small inconvenience. The Tax Commission's affidavit identifies approximately one-hundred and seventy-seven cities and twenty-four counties that would be required to contribute to the refund amount. The litigation against the respective cities and counties for the enforcement of the refund would consume additional tax dollars.
The majority's citation of Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) and Griggs v. State, 702 P.2d 1017 (Okla. 1985) shows that a court must weigh the probable inequity of the retroactive application of a principle of law. Those citizens who paid the sales taxes received the benefit of governmental services when their respective counties and municipalities included those taxes in their fiscal budgets. Any refund of those taxes must come from those same governmental entities. Okla. Const. Art. 10 § 20. According to the argument of the Tax Commission these refund amounts would come from the current sales tax revenues of those counties and cities, a potentially disastrous consequence for the fiscal stability of several of the political subdivisions. In my view, the refunds would instead be required to come from the appropriate sinking funds  likely requiring raising the taxes of those very taxpayers receiving a refund. In either scenario the communities would be subject to litigation and fiscal turmoil with little net relief to the individual taxpayer. Thus, I would end this controversy now and hold that Branch will be held retroactive only as to the State, but prospective as to counties and municipalities.

IV. The "Next Case."
Resolving the present controversy does little for the State unless we can give the Tax Commission some guidance for the real problem herein and its recurrence in the "next case." The Commission is statutorily required to refund all amounts paid under protest although some of those funds have been already distributed to counties and municipalities. The majority indicates that the Commission acts as agent for counties and municipalities in the collection and administration of the sales tax. I agree, and under the statutory requirement that all of the protested tax be refunded I would give the Tax Commission the duty to segregate and retain all non-State sales tax revenue when such is paid under protest and subject to the possibility of a refund. Such action by the Commission would require notifying all affected political subdivisions, since such revenue could possibly have been included in their budgets. See 11 O.S. 1981 §§ 17-204 and 17-206, wherein "estimated revenue" is included in a municipal budget. Such a result would assist in assuring the availability of funds if a protest is successful and thereby maintain the fundamental fairness of our tax collection procedure.
I am authorized to state that Justice ALMA WILSON and Justice KAUGER join in these views.
NOTES
[1] The electric cooperatives collected and remitted the taxes due. Every person required to collect a sales tax is personally liable for the tax. 68 O.S. 1981 § 1361(A). The term "person" includes "corporations," 68 O.S.Supp. 1985 § 202(e), and a rural electric cooperative is a corporation, 18 O.S. 1981 § 437.1. Any person liable to pay a state tax is a "taxpayer." 68 O.S.Supp. 1985 § 202(d)(1). A taxpayer may protest the assessment of a tax collected by the Tax Commission. 68 O.S.Supp. 1981 § 221. The electric cooperatives have standing to seek a refund of the taxes they paid under protest.
[2] The statutory expectation arises only if a taxpayer is successful with a tax protest. In the controversy before us the taxpayer is successful with a protest only if this court applies Branch retroactively. We ruled in Branch that the tax was contra to State law. Generally, a State court has the authority to determine the retroactivity of its own decisions involving State law. See, American Trucking Associations, Inc. v. Smith, ___ U.S. ___, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990), (plurality opinion by Justice O'Connor joined by Rehnquist, C.J., White and Kennedy, JJ.). A refund is required under the Federal Constitution only when a state requires payment of the tax as a condition precedent for judicial review and the tax is contrary to the Federal Constitution. McKesson v. Div. of Alcoholic Beverages & Tobacco, ___ U.S. ___, 110 S.Ct. 2238, 2247, 110 L.Ed.2d 17 (1990). No arguments or claims are made herein that the Federal Constitution requires a refund.
[3] See, Okla. Const. Art. 10 § 20:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."
See also, Okla. Const. Art. 10 § 15 and the restriction that the credit of the State shall not be given to political subdivisions of the State except as provided for therein.
[4] See, Okla. Const. Art. 10 § 28:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay."
See also, 62 O.S. 1981 §§ 431 and 435, (providing for the payment of judgments from a municipality's sinking fund) and 11 O.S. 1981 § 17-209(D) (providing that the county excise board shall levy taxes necessary for the municipality's sinking fund for the budget year pursuant to § 431 of Title 62); 19 O.S. 1981 § 6, (payment of judgment against county by taxes levied by county).