**DUNCAN MEDICAL SERVICES,**
Appellant,

v.

**STATE of Oklahoma ex rel. OKLAHOMA
TAX COMMISSION, Appellee.**

No. 76240.

Supreme Court of Oklahoma.

July 19, 1994.

As Corrected May 16, 1995.

Rehearing Denied Feb. 22, 1996.

David L. Benefield, Garvin, Bonney, Weaver & Corley, Duncan, for appellant.

David Allen Miley, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

ALMA WILSON, Justice:

This is an appeal from an order denying a protest to a proposed assessment of sales tax and a claim for refund of sales tax voluntarily collected, reported and paid. The dispositive issue presented in the protest to the proposed assessment is whether the original book entry charge or the amount of payment subsequently approved by the Medicare Program for the use of medical equipment and/or supplies constitutes gross receipts for purposes of calculating sales tax imposed upon the transaction. We find that the amount of payment approved by Medicare is the total consideration agreed upon at the time of the taxable transaction and thus that amount is the gross receipts for calculating the sales tax imposed upon the transaction. We hold that, under the facts and circumstances herein, the protested proposed assessment of sales tax calculated upon the original book entry charges rather than the amounts of payment approved by Medicare is erroneous and unenforceable. The dispositive issue presented in the claim for refund is whether the rental or sale of an oxygen concentrator is exempt from sales tax under 68 O.S.1981, § 1357(H). We conclude that the rental or sale of an oxygen concentrator was a taxable transaction during the audit period herein. We hold that appellant is not entitled to a refund of sales tax collected, reported and remitted on sales or rentals of oxygen concentrators occurring from December, 1984 through November, 1987.

Appellant, Duncan Medical Services Home Oxygen and Medical Equipment Centers, Inc. (Duncan Medical) provides medical equipment and medical supplies, including bottled oxygen and oxygen concentrators,[1] for in-home use. During the involved audit period, Duncan Medical had established charges for all its sales or rentals. At the time of each sale or rental, Duncan Medical recorded the established charge in its daily sales journal and, at the close of each calendar month, it reported and remitted sales tax based upon the charges entered in its daily sales journal for the preceding month.

During the involved audit period, Duncan Medical participated in the Medicare Program and billed Medicare under an assignment on the medicare insurance claim form. Medicare required that its insureds be charged the established amount charged to all other customers. However, assignment under Medicare obligated Duncan Medical to

---

1. An oxygen concentrator is a machine which separates oxygen from room air through a filter-ing process. The oxygen concentrator is designated by the physician's prescription for oxygen.

accept the amount of payment approved by Medicare as the full amount to be charged the customer.[2] There was a time delay of several weeks between the occurrence of the taxable transaction and approval from Medicare of the amount of payment. Generally the amount approved by Medicare was less than Duncan Medical's established charge. Upon approval of the amount from Medicare for equipment or supplies provided to customers with Medicare insurance, Duncan Medical made a correction entry in its daily sales journal as of the date of the transaction.[3] And, in order to recoup the overpayment of sales tax on the Medicare approved transactions, Duncan Medical reduced its current month gross receipts reported for sales tax purposes accordingly. From its inception in August, 1984, Duncan Medical used a cash basis accounting procedure and reported its income for tax purposes as a cash basis taxpayer.

Pursuant to 68 O.S.1981, § 221,[4] the Sales and Use Tax Section of the OTC conducted a field audit of the books and records of Duncan Medical for the period from December, 1984 through November, 1987. In the course of the audit, the Sales Tax auditor advised Duncan Medical that the reductions in gross receipts on subsequent monthly reports to recoup overpayment of sales tax on medicare covered transactions were improper; that the reported reductions were actually credits for which it should have had prior approval from the OTC before taking the credits on the subsequent monthly reports; and a cash basis taxpayer may not utilize the bad debt method of recouping overpayments of sales tax. Upon concluding the field audit, a proposed assessment of additional sales tax calculated upon the unauthorized reductions in the gross receipts in the monthly sales tax reports for the period from December, 1984 through November, 1987 was issued to Duncan Medical in the amount of $8,641.22, plus $1,691.26 interest and $864.12 penalty.

Duncan Medical protested the proposed assessment. Within the course of the § 221[5] administrative proceeding, Duncan Medical claimed a refund of sales tax paid on the rental or sale of oxygen concentrators in accordance with § 227 of Title 68. Upon hearing the matter, the Administrative Law Judge submitted findings of fact and conclusions of law and recommended that the protest and claim for refund be denied. By Order No. 90–08–07–020, the OTC adopted the findings, conclusion and recommendation of its hearing officer. Duncan Medical paid the proposed assessment under protest and filed an appeal in accordance with § 225 of Title 68. The Court of Appeals vacated the order of the Oklahoma Tax Commission, concluding that 68 O.S.1981, § 1366 violates Art. 10, § 5 of the Oklahoma Constitution and that the rental or sale of oxygen concentrators was exempted from the sales tax levy by

2. Medicare paid 80% of its approved charge directly to Duncan Medical and authorized Duncan Medical to collect the remaining 20% from the customer. Under the terms of the Medicare assignment, Duncan Medical agreed that it would not attempt to collect from the customer the amount of its established charge which exceeded the amount approved by Medicare.

3. It is unclear from the record whether Duncan Medical entered the amount of the Medicare approved charge or that amount less the sales tax.

4. Section 221 authorizes the OTC to determine the "correct amount of tax for the taxable period" from any available information or through office audit of the report or return or through field audit of books, records or other sources. Section 221 expressly provides that if a taxpayer fails to make a report as required by law, the OTC may determine the correct amount of tax

for the taxable period from any information; that if an OTC examination reveals that the tax reported is less than the tax due and owing, the OTC shall propose assessment of the additional tax; that any assessment, correction or adjustment made as the result of an office audit "shall not preclude the OTC from making further adjustment, correction or assessment as the result of a field audit of the books and records of the taxpayer, wherever located, or upon disclosures from any source other than the return." Section 221 was amended in 1987 and 1989, without substantial change to the provisions applicable herein. 1987 Okla.Sess. Laws, ch. 236, § 199; 1989 Okla.Sess. Laws, ch. 249, § 11. The applicable provisions remain unchanged in the 1991 recodification.

5. In addition to the provisions discussed in footnote 4, supra., § 221 provides an administrative remedy for taxpayers aggrieved by a proposed assessment.

68 O.S.1981, § 1357(H). We previously granted certiorari.

## I. THE PROPOSED ASSESSMENT.

The distillate of the arguments challenging and supporting the proposed assessment is as follows. Duncan Medical asserts that it is equitably entitled to reimbursement of the overpayment of the sales tax assessed; that Regulation 13–58, implementing 68 O.S.1981, § 1366, constitutes an impermissible discrimination against cash basis taxpayers and a deviation from legislative intent that the burden of the sales tax fall on the consumer; and that the OTC may not change its interpretation of § 1366 without clear, cogent reason. The OTC responds that there is no equity in tax law; that the sales tax is calculated upon the gross receipts of the taxable transaction and the statutory definition of gross receipts expressly forbids deductions from gross receipts; and that § 1366, and Regulation 13–58, provide credits rather than deductions from gross receipts as taken by Duncan Medical and are constitutionally sound.

■ Although the principle is harsh, there is no room for equitable considerations in the administration of tax laws.[6] Although Duncan Medical argues that Regulation 13–58[7] is unconstitutional because it provides unreasonable preferential treatment of accrual basis taxpayers, the Court of Appeals found the bad debt credit statute, 68 O.S.1981, § 1366[8] and the regulation to be unconstitutional. We do not address the constitutional arguments because the challenge to the proposed assessment can be resolved without reaching the constitutionality of either the statute or the regulation.[9]

■ The OTC takes the position that "what this protest involves is the Division's assessment of sales taxes against amounts which were deducted from taxable gross receipts on Duncan Medical's books" and that "it properly denied the adjustments made by Duncan Medical on its books for disallowed amounts because the statute defining gross receipts does not allow that." The imposition of state taxes is purely statutory,[10] thus the taxes proposed to be assessed herein must be within the statutory levy.

■ The state sales tax is levied in § 1354,[11] which provides, in pertinent part:

1. There is hereby levied upon all sales, not otherwise exempted in the Oklahoma Sales Tax Code, an excise tax of four percent (4%) of the gross receipts or gross proceeds of each sale of the following:

(A) Tangible personal property; ...

(Q) The gross receipts or gross proceeds from the rental or lease of tangible personal property....

6. *Western Auto Supply Company v. Oklahoma Tax Commission*, 328 P.2d 414, 420 (Okla.1958).

7. This regulation is entitled CREDITS. It sets forth the documentation required before the OTC will issue "a valid letter of credit," which is allowable "only to the person who remitted and reported the tax." The holder of a letter of credit may reduce the amount of sales tax shown on the face of a monthly sales tax report by the amount of the authorized credit. The regulation addresses situations where sales tax were erroneously remitted on exempt transaction or mathematical errors, as well as bad debts. Regulation 13–58 came into being mid-stream of the audit period herein. It was adopted May 19, 1986, filed May 20, 1986, and published June 2, 1986, Oklahoma Gazette, 3:8 (2437–82). Regulation 13–58 has been superseded by Rule 13.008.02.

8. Section 1366 is captioned "Credits." It provides that taxes paid on gross receipts represent-ed by accounts receivable may be credited upon subsequent reports and remittances if the account is worthless or uncollectible and written off for income tax purposes or the property is repossessed under the terms of a conditional sales contract. Bad debt deductions to arrive at taxable income are applicable to accrual basis taxpayers, not cash basis taxpayers. Amended in 1990, § 1366 now authorizes the credit for a cash basis taxpayer as well as an accrual basis taxpayer. 1990 Okla.Sess. Laws, ch. 339, § 18.

9. *Anderson v. Dyco Petroleum Corp.*, 782 P.2d 1367 (Okla.1989).

10. *Western Auto Supply Company v. Oklahoma Tax Commission*, 328 P.2d 414, 420 (Okla.1958).

11. The applicable provisions in the levying section in 1981 codification through the 1991 recodification have not been substantially changed.

Gross receipts or gross proceeds is defined in § 1352(F),[12] which provides:

Definitions.

As used in this article: ...

(F) "Gross receipts" or "gross proceeds" means the total amount of consideration for the sale of any tangible personal property or service taxable under this article, whether the consideration is in money or otherwise. "Gross receipts" or "gross proceeds" shall include, but not be limited to:

(1) Cash paid, and

(2) Any amount for which payment is charged, deferred, or otherwise to be made in the future, regardless of the time or manner of payment, and

(3) Any amount for which credit or a discount is allowed by the vendor, and

(4) Any amount of deposit paid for transfer of possession, and

(5) Any value of a trade-in or other property accepted by the vendor as consideration, except for used or trade-in parts excluding tires or batteries for a motor vehicle, bus, motorcycle, truck-tractor, trailer, semitrailer or implement of husbandry, as defined in Sections 1–105, 1–125, 1–134, 1–135, 1–162, 1–180 and 1–183 of Title 47 of the Oklahoma Statutes, if the used or trade-in parts are taken in trade as exchange on the sale of new or rebuilt parts.

There shall not be any deduction from the gross receipts or gross proceeds on account of cost of the property sold, labor service performed, interest paid, or losses, or of any expense whatsoever, whether or not the tangible personal property sold was produced, constructed, fabricated, processed, or otherwise assembled for or at the request of the consumer as part of the sale.

■ The OTC contends that the charge approved by Medicare is not within the statutory definition of gross receipts. This Court has recently determined that gross receipts or gross proceeds is plainly defined in § 1352(F) and its plain meaning must be followed.[13] The plain meaning of gross receipts or gross proceeds upon which the sales tax shall be calculated is the total consideration received by the seller or the total obligation incurred by the purchaser at the time of the transaction, if greater than the monetary consideration received by the seller.[14]

Adhering to the plain meaning of the statutory definition, the gross receipts or gross proceeds, upon which the sales tax imposed on the involved Medicare covered transactions must be calculated, are the amounts approved by Medicare. It is the Medicare approved amount which, at the time of each taxable transaction, the medicare covered customer and Duncan Medical agreed would be the total consideration exchanged for the transaction. Neither the medicare customer nor Duncan Medical knew the exact amount of the monetary value or consideration which would be given and/or received for the sale or rental of the medical supplies or equipment and therefore Duncan Medical entered its customary charge in its books and submitted that amount to Medicare for approval. The recording of the appropriate established charge in the daily sales journal by Duncan Medical, however, did not conclusively fix the amount of the consideration which would be exchanged for the transaction. The amount of consideration for the transaction was conclusively determined by the Medicare Program.[15]

12. Although the Legislature has made numerous amendments to § 1352, the definition of gross receipts or gross proceeds in the 1981 codification through the 1991 recodification has not been substantially changed.

13. *Pioneer Telephone Co-op v. Oklahoma Tax Commission,* 832 P.2d 848 (Okla.1992).

14. *Id.*

15. The OTC urges that the original book entry amounts constitute gross receipts for sales tax purposes. On the other hand, the essence of Duncan Medical's equity argument is that no sales tax is due and owing on the excess of its original book entry charge over and above the amount approved by Medicare and the OTC implicitly agrees. The OTC implicitly agrees that had Duncan Medical followed the correct reporting procedure the OTC would have recognized the overpayments. In recommending that the protest be denied, the OTC's Administrative Law Judge concluded that a procedure for establishing the validity of credit for overpayment of sales tax has been in place for many years and was available to Duncan Medical, as a cash basis taxpayer, for receiving the credits on the uncollected sales taxes, but, Duncan Medical did not

■ Although it was impossible to ascertain the gross receipts or gross proceeds at the time of the taxable transaction and at the time the sales tax was required to be reported and remitted, that impossibility was removed by the time the field audit was conducted and the proposed assessment was issued. The field audit and assessment provisions of § 221 are pervasive governmental actions to assure that "the correct amount of tax for the taxable period" is paid.[16] The assessment powers vested in the OTC by § 221 may be used to collect the correct amount of the consumer sales tax levy from the vendor, but an assessment may not be used to penalize improper vendor reporting where the consumer sales tax for the taxable period has been paid.[17]

Section 221 authorizes the OTC to examine the books and records of the taxpayer, wherever located, and information from any source other than the return to determine the correct amount of the tax for the taxable period and issue a proposed assessment of the tax that has not been paid. The protested proposed assessment of sales tax is calculated upon the original entry in the daily sales journal rather than the gross receipts received from the taxable transactions, notwithstanding that documentation of the Medicare approved payments for the various taxable transactions that occurred during the audit period were examined by the OTC field auditor as verification of the actual gross receipts or gross proceeds and the correct amount of tax due for the taxable period, as well as the daily sales journal and cash receipts. The tax assessed in the proposed assessment is not within the tax levying statute, imposing the excise tax calculated upon the gross receipts or gross proceeds received by the seller or which the purchaser becomes obligated to pay.[18] The correct amount of sales tax for the audit period from December, 1984 through November, 1987, should have been determined from Duncan Medical's books and records and documentation of Medicare approved charges.[19]

■ The appellate courts will review the entire record made in a § 221 administrative proceeding to determine whether the findings and conclusions set forth in the order

adhere to the requirements for receiving the credits. In reversing the OTC, the Court of Appeals said that the OTC did not question the amount of the credits taken by Duncan Medical, rather it contends that Duncan Medical was not entitled to the credits because the method used to claim the credits was not authorized by law.

16. See, footnote 4, supra.

17. The OTC takes the position that the assessment is proper because Duncan Medical Services improperly self-helped itself to credits in its monthly sales tax reports to recoup overpayments in prior months. Admitting "that the amounts deducted by Duncan Medical were uncollectible amounts upon which tax had previously been paid," the OTC circuitously argues that § 1366 and Reg. 13–58 provide a "procedure for credit for taxes paid on bad debts … where Duncan Medical may properly obtain relief" but that "Duncan Medical must choose to be an accrual basis taxpayer in order to take advantage of the bad debt credit." The OTC's position might be correct if the propriety of bad debt credits and monthly sales tax reports were at issue. But they are not. At issue is the correct amount of tax due for the audit period. Further, there is no allegation that Duncan Medical intentionally disregarded state tax laws or submitted fraudulent reports subject to prosecution and/or penalties under §§ 240 through 245 of Title 68 of the Oklahoma Statutes.

18. *Pioneer Telephone Co-op v. Oklahoma Tax Commission,* supra.

19. By this opinion, we do not determine the propriety of the monthly sales tax reports submitted by Duncan Medical during the audit period. The authority of the OTC to reject a monthly report as filed or to reject an unauthorized credit taken on a monthly report is not at issue. We recognize that the statutes require tax remitters/taxpayers to maintain sufficient books and records so that the correct amount of taxes imposed can be determined, 68 O.S.1981, § 1365(C); that the OTC, in the administration and enforcement of the tax laws, may disallow reports as filed, direct the filing of amended monthly reports and deny credits claimed on a monthly report where the established procedure has not been followed; and that the enforcement of tax laws may impact taxpayers differently on the basis of their accounting procedures. *United States v. Catto,* 384 U.S. 102, 86 S.Ct. 1311, 16 L.Ed.2d 398 (1966).

Further, we note that the recurrence of the Medicare generated reporting difficulty is unlikely inasmuch as the sale or rental of medical equipment and supplies is now exempt from sales tax, as discussed in part II. of this opinion.

are supported by substantial evidence.[20] The parties dispute whether Duncan Medical paid sales tax calculated on the Medicare approved charges or whether it reduced the approved charges by the sales tax percentage.[21] Pursuant to 68 O.S.1981, § 1361, now 68 O.S.1991, § 1361, the sales tax shall be added to the gross receipts not included in the gross receipts. Accordingly, the order of the OTC denying the protest to the proposed assessment issued to Duncan Medical must be reversed and this matter must be remanded for a determination of the correct amount of sales tax levied upon the involved Medicare approved transactions during the audit period.

## II. THE CLAIM FOR REFUND.

■ Mid-stream of the proposed assessment protest proceeding, Duncan Medical asserted that it was entitled to a refund of sales tax paid during the audit period on the rental or sale of oxygen concentrators.[22] Duncan Medical asserts that the rental or sale of an oxygen concentrator was nothing more than the sale of oxygen prescribed by a physician. The OTC responds that the rental of an oxygen concentrator is the rental of medical equipment which is not within the statutory exemptions authorized for the involved audit period.

The sale of prescription medicines and drugs were exempted from the sales tax levy by § 1357(H),[23] which provided:

Exemptions—General

There are hereby specifically exempted from the tax levied by this article: ...

(H) Sales of medicines or drugs prescribed for the treatment of human beings by a person licensed to prescribe the medicines or drugs. Provided, this exemption shall not apply to proprietary or patent medicines as defined by Section 353.1 of Title 59 of the Oklahoma Statutes....

Section 1357(H) must be strictly applied.[24] The Court of Appeals concluded that oxygen concentrators were within the definition of medicines and drugs defined in 59 O.S.1981, § 353.1. A strict reading of the exemption does not permit the judiciary to give special meaning to the terms "medicines" and "drugs" on the basis that the statute refers to a special definition for that which is not exempt, proprietary or patent medicines as defined by § 353.1 of Title 59. The ordinary and common meaning must be assigned to the words "medicines" and "drugs."[25] Had the Legislature intended "medicines" or "drugs" to have a special meaning it could have so provided, either in the exemption statute as it provided for "proprietary or patent medicines" or in § 1352, the definitions section to the sales tax statutes. The rental or sale of an oxygen concentrator is not the sale of "medicines" or "drugs," within the ordinary meaning of those terms. Rather, it is the rental of medical equipment prescribed by a physician.

The ordinary meaning of "medicines" and "drugs" as used in § 1357(H) is consistent

---

20. *Dugger v. State ex rel. Oklahoma Tax Commission,* 834 P.2d 964 (Okla.1992); *State v. Oklahoma State Board for Property and Casualty Rates,* 731 P.2d 394, 404 (Okla.1986) and *Suglove v. Oklahoma Tax Commission,* 605 P.2d 1315, 1318 (Okla.1980).

21. Refund of the proposed assessment amount which had to be paid in order to maintain an appeal does not run afoul of *Kay Electric Cooperative v. Oklahoma Tax Commission,* 815 P.2d 175 (Okla.1991).

22. The sales tax on oxygen concentrators for which Duncan Medical claims a refund were collected, reported and paid and are not included in the proposed assessment. In determining the correct amount of tax due, a claim for refund of

voluntarily reported taxes may be made. See, 68 O.S.1991, § 223 authorizing a extension of time within which to assess the tax and to claim a refund.

23. Title 68 O.S.1981, § 1357. The exemption for medicines and drugs was not changed by amendments to § 1357 in 1985 and 1987. 1985 Okla. Sess. Laws, ch. 161, § 2; 1987 Okla.Sess. Laws, ch. 7, § 1.

24. *Matter of Protest of First Federal Savings and Loan Association of Claremore,* 743 P.2d 640 (Okla.1987) cert. denied, 485 U.S. 901, 108 S.Ct. 1070, 99 L.Ed.2d 230.

25. Title 25 O.S.1991, § 1.

with subsequent statutory changes. Section 1357 as amended in 1991,[26] provided:

(G) In addition to the exemptions authorized by Section 16 of this act, sales of medicines or drugs prescribed for the treatment of human beings by a person licensed to prescribe the medicines or drugs. Provided, this exemption shall not apply to proprietary or patent medicines as defined by Section 353.1 of Title 59 of the Oklahoma Statutes....

Section 16 of the act referenced in § 1357(G),[27] is codified at 68 O.S.1991, § 1357.6 and provides:

A. Effective July 1, 1992, there are hereby exempted from the tax levied by this article, Section 1351 et seq. of Title 68 of the Oklahoma Statutes, sales of drugs or medicine for the treatment of human beings, medical appliances, medical devices and other medical equipment including but not limited to prosthetic devices, as defined in subsection C of this section, and durable medical equipment, as defined in subsection D of this section....

[Emphasis added.]

The sale or rental of an oxygen concentrator was a taxable transaction during the audit period herein.[28] Appellant is not entitled to a refund of sales tax collected, reported and remitted on sales or rentals of oxygen concentrators occurring from December, 1984 through November, 1987.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; OKLAHOMA TAX COMMISSION ORDER NO. 90–08–07–020 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

HODGES, C.J., LAVENDER, V.C.J., and OPALA and WATT, JJ., concur.

KAUGER, J., concurs in result.

SIMMS, HARGRAVE and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting.

The Court's opinion does not really identify the nature of the dispute, and is contrary to both *Kay Electric Cooperative v. Oklahoma Tax Commission*, 815 P.2d 175 (Okla. 1991), and *Pioneer Telephone Co-op. v. Tax Commission*, 832 P.2d 848 (Okla.1992). First, let me try to articulate the nature of the dispute.

The seller sold an oxygen concentrator for $304.50, with $18.27 added as tax for a total of $322.77. Medicare allowed $294.93 for the item and sent the seller a check for $235.94 (80% of $294.93). The sum of $58.99 (20% of $294.93) was to be paid by the individual buyer or secondary insurance. The seller paid a sales tax on this sale based upon a sale of $322.77 instead of $294.93. The seller has had numerous such sales, and seeks a refund from the Tax Commission.

The seller/taxpayer argues that the difference between $322.77 and $294.93 is a bad debt. That is incorrect, as no obligation to pay this difference was incurred by the buyer. See *U.S.I.F. Norman Corp. v. Oklahoma Tax Commission*, 534 P.2d 1298, 1300 (Okla. 1974) where the court defined indebtedness. The definition of a "bad debt" as defined by the federal regulations for Medicare is also contrary to seller's argument.[1]

---

26. 1991 Okla.Sess. Laws, ch. 342, § 13, now codified as § 1357(7), 1993 Okla.Sess. Laws, ch. 275, § 11, most recently amended 1994 Okla. Sess. Laws, ch. 2, § 22.

27. 1991 Okla.Sess. Laws, ch. 342, § 16.

28. The issues presented by the claim for refund as well as the proposed assessment are not likely to recur under the current statutes, exempting sales of prescription medicines and medical equipment. Accordingly, whether the parties have failed to present arguments as to whether the Medicare approved amounts is a discount, as explained by the dissent, is not critical. And as the dissent says, even if we called for briefs on the discount issue, it appears that an administrative rule of the OTC provides that discounts agreed to at the time of the transaction are not taxable.

1. For the purpose of Medicare a bad debt is related to a covered service and derived from deductible and coinsurance amounts. 42 C.F.R. § 413.80(e)(1) [formerly codified at 42 C.F.R. § 405.420]. *See also Palms of Pasadena Hospital v. Sullivan*, 289 U.S.App.D.C. 366, 932 F.2d 982, 983 (D.C.Cir.1991); *Eden Park Health Services, Inc. v. Axelrod*, 114 A.D.2d 721, 494 N.Y.S.2d 524, 527 (1985); *Arnot Ogden Memorial Hospital v. Axelrod*, 131 Misc.2d 779, 502 N.Y.S.2d 372, 374–375 (1986), *reversed on other grounds*, 129 A.D.2d 103, 516 N.Y.S.2d 972 (1987).

What this case is about is the includability of "discounts" within "gross proceeds" for the calculation of sales tax due. For this sale the difference between $322.77 and $294.93 is a discount, specifically, a "third-party payment discount". *Weymouth Township v. Memorial Park Family Practice Center, Inc.*, 7 N.J.Tax 589, 601 (1985). See also *Chisago Health Services v. Commissioner of Revenue*, 462 N.W.2d 386 (Minn.1990), where that court explained that in accepting Medicare and Medicaid payments a seller "discounts its market fees", and the difference between the market fee and· the payment accepted was not a gift or charity. *Id.* 462 N.W.2d at 391. In explaining Medicare and Medicaid discounts the court further stated that "there is little conceptual difference between these discounts and the business discounts negotiated by HMO's and health insurers on behalf of their insureds with both public and private clinics and hospitals." *Id.* Cf. *Borland v. Bayonne Hospital*, 122 N.J.Super. 387, 300 A.2d 584, 594 (1973), (noting Blue Cross discounts); *Griffin Hospital v. Commission on Hospitals and Health Care*, 196 Conn. 451, 493 A.2d 229, 235 (1985), (same).

The majority holds that the amount representing the discount is not taxable: "It is the Medicare approved amount which . . . would be the total consideration exchanged for the transaction." This is likely incorrect under the relevant taxing statute. In Oklahoma a sales tax is imposed upon "gross receipts" or "gross proceeds". *Pioneer Telephone Cooperative Inc. v. Oklahoma Tax Commission*, 832 P.2d 848, 851 (Okla.1992). The audit period in this case is December 1, 1984 through November 30, 1987, and during those years the gross proceeds for a sales tax included a discount allowed by the vendor.

(F) "Gross receipts" or "gross proceeds" means the total amount of consideration for the sale of any tangible personal property or service taxable under this article, whether the consideration is in money or otherwise. "Gross receipts" or "gross proceeds" shall include, but not be limited to:

(1) Cash paid, and

(2) Any amount for which payment is charged, deferred, or otherwise to be made in the future, regardless of the time or manner of payment, and

(3) Any amount for which credit or a discount is allowed by the vendor, and. . . .

12 O.S.Supp.1987 § 1352, (emphasis added and eff. July 1, 1987).[2] This taxpayer/seller is no different than any other vendor, and must under the plain language of § 1352(F) remit a sales tax based upon the gross proceeds, including the discount given to Medicare customers, unless excused from doing so by some other authority. Cf. *Medic House, Inc. v. Director of Revenue*, 799 S.W.2d 80, 83 (Mo.1990), (en banc), (vendor of oxygen must remit sales tax on sales to Medicare customers although Medicare does not pay sales tax to vendor); *Akron Home Medical Services, Inc. v. Lindley*, 25 Ohio St.3d 107, 495 N.E.2d 417 (1986), (vendor of oxygen must remit sales tax on sales to Medicare customers).

The discount amount is taxable under § 1352, unless made non-taxable by some other provision of law. That other provision could be a Rule of the Oklahoma Tax Commission. The seller/taxpayer also argued before the Commission that it had given a "trade discount" to its Medicare customers. The Commission apparently has a Rule which classifies different types of discounts, and allows subtraction of a "trade discount" from the gross proceeds when the discount is agreed upon at the time of contracting. Oklahoma Administrative Code 710:65–1–9.[3]

---

**2.** Identical language appears in 12 O.S.Supp. 1985 § 1352(F), (eff. July 1, 1985); 12 O.S.Supp. 1984 § 1352(F), (eff. Jan. 1, 1984).

**3.** The current Rule describes "early payment discounts" which are not deductible from "gross proceeds" and, "trade discounts" "used to reduce the selling price" at the time of sale, which are. I decline to address the propriety of such a Rule with respect to the language of § 1352(F)

since the Rule is not at issue, and because the parties have not presented the Court with the Rule as it was in effect during the time of the audit period. In *United States v. California Portland Cement Co.*, 413 F.2d 161, 172–174 (9th Cir.1969) that court discussed trade discounts and cash discounts for federal tax purposes of determining "gross income from property" with the former used to induce a sale and the latter used to encourage prompt payment. *See also*

I construe this language to mean that the amount of a non-taxable discount must be agreed at the time of the sale. Any other view would be inconsistent with § 1352 and *Pioneer Telephone Co-op. v. Tax Commission, supra*. Since the majority opinion appears to state that the extent of the discounts were unknown at the time of sale the discounts would appear to be taxable under the current Rule. But the majority opinion finds the discounts to be not taxable.

The proceeding as it has been briefed shows that the taxpayer has not met its burden in showing a right to a refund. See *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Commission*, 768 P.2d 359, 362 (Okla.1988) where we explained that a protesting taxpayer must sustain the burden of proving the tax assessment was erroneous. The majority opinion incorrectly holds otherwise by finding that a refund on the discount amounts is due, with a field audit needed to determine the exact amount due. I would instead require further briefing by the parties on the issue as to whether the discounts here are or are not taxable under the applicable statutes and rules.[4]

The reasoning of the majority opinion is contrary to *Pioneer Telephone Co-op. v. Tax Commission*, 832 P.2d 848 (Okla.1992). In *Pioneer* the consumer bought telephone service from a telephone cooperative and paid pursuant to a rate set by the Corporation Commission. At the end of the year an accounting was performed by the cooperative, and if it showed a profit that amount was distributed to the customers by crediting their capital accounts administered by the cooperative. *Id.* 832 P.2d at 849. These amounts returned were deemed loaned to the cooperative as capital. *Id.* The cooperative argued that it should not be required to pay a sales tax on the amounts credited to its customers and then loaned back to the cooperative.

In the present case the majority opinion will fix the amount of tax liability as determined at a field audit long after the time of the sale, because the field audit will take into account Medicare transactions that occurred after the date of the sale. This is contrary to *Pioneer, supra*, where the Court explained that a sales tax is based upon the nature of the transaction at the time of the sale, and not upon transactions occurring after the date of the sale. One of the majority's stated reasons for doing so is that the exact amount of tax liability could not be determined at the time of sale. The record does not show that the seller was unable to determine at the time of sale the amount Medicare would authorize for that type of sale.

The opinion may also be contrary to *Kay Electric Cooperative v. Oklahoma Tax Commission*, 815 P.2d 175 (Okla.1991). The effect of the majority opinion will be a refund to the seller/taxpayer of those amounts of sales taxes collected on the difference between the Medicare authorized amount and the amount of the sale. On certiorari the Tax Commission argues that *municipal* sales taxes will be returned by the Commission if the tax protest is successful, and that this result is contrary to *Kay Electric Cooperative*. *Kay* determined that a successful sales tax protest would not result in returning municipal sales taxes when the municipalities were not parties to the protest. I can concur on this point if *Kay* is no longer the law. See *Kay Electric Cooperative v. Oklahoma Tax Commission*, 815 P.2d at 178–181, Summers, J., concurring in part and dissenting in part. But I must dissent from the unexplained departure from *Kay*, as it will needlessly confuse the Commission

---

*R.J. Peacock Canning Co. v. Commodity Credit Corp.*, 88 U.S.App.D.C. 31, 185 F.2d 894, 896 (D.C.Cir.1950), (explained cash discounts). The extent to which benefits to the participating Medicare supplier reflect trade or cash discounts, or non-taxable discounts under the Commission Rule in effect during the audit period is not briefed by the parties. See O.R. at 102–103 where the "incentives" given by Medicare to participating suppliers such as the taxpayer are listed.

4. The parties have briefed as to what to call the Medicare discounts, and the proper method of accounting by the taxpayer as a sales tax remitter, but they have not identified them as discounts. These issues have been present from the beginning of the case, and I would require particularized briefing on the nature of the accounting method available for timely remitting of sales taxes when a third-party payor discount is involved.

and other taxpayers. See the application for leave to appear as *amicus curiae* filed in this case by the Oklahoma Municipal League, Inc. and the Commission's petition for certiorari.

In sum, the majority does not analyze the transaction as a sale involving a third-party (Medicare) payment discount. Because of this the opinion does not discuss the extent to which discounts may or may not be subject to a sales tax. The opinion is contrary to *Pioneer Telephone Co-op. v. Tax Commission*, 832 P.2d 848 (Okla.1992) in that it allows taxpayer transactions after the date of a sale to determine the amount of a sales tax. It is also an unexplained departure from *Kay Electric Cooperative v. Oklahoma Tax Commission*, 815 P.2d 175 (Okla.1991). For these reasons I respectfully dissent.

I am authorized to state that Justice SIMMS and Justice HARGRAVE join in these views.