SAM A. BEATTY, Retired Justice.
The defendant, the Department of Revenue, appeals from a judgment in favor of the plaintiffs, Mon-Cre Telephone Cooperative, Inc., New Hope Telephone Cooperative, Inc., and Farmers Telephone Cooperative, Inc. We affirm.
The Cooperatives are nonprofit member-owned corporations that provide local telephone service in certain rural areas of Alabama. They were created pursuant to § 37-6-41, Ala.Code 1975, which authorizes electric cooperatives to provide telephone service to members in rural areas. The three Cooperatives are the only telephone cooperatives in the state.
In order to obtain funds to run its business, a cooperative estimates the funds it will need and establishes a charge or “advance” that each cooperative member pays each month. At the end of a certain period of time, typically a year, if the cooperative has collected more money from its members than it needed to run the business, then the excess advances are returned to the members, either in the form of a credit to their capital accounts or in the form of a rate reduction. The return of excess advances is mandated by § 37-6-20, Ala.Code 1975, which states:
“Revenues of a cooperative for any fiscal year in excess of the amount thereof necessary to defray expenses of the cooperative and of the operation and maintenance of its facilities during such fiscal year ... shall be distributed by the cooperative to its members as, and in the manner, provided in the bylaws, either as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year or by way of general rate reductions, or by combination of such methods.”
Before September 1, 1992, telephone cooperatives in Alabama were required to collect and pay to the state a 4% utility gross receipts tax pursuant to § 40-21-80(2), Ala. Code 1975 (now repealed), and a 2.5% privilege or utility license tax pursuant to § 40-21-58 Ala.Code 1975 (now repealed). These taxes were replaced on September 1, 1992, by a 6.7% utility gross receipts tax pursuant to § 40-21-82, Ala. Code 1975 (1993 Repl. *181 Vol.). The Cooperatives pay the utility gross receipts tax, and previously paid the utility license tax, on the total amount initially advanced by its members.
In 1983, this court held that amounts collected by electric cooperatives from their members that later are credited back to the members in the form .of patronage credits represent obligations to cooperative members, rather than gross receipts within the meaning of the utility gross receipts tax. See State v. Pea River Electric Co-op., 434 So.2d 785 (Ala.Civ.App.1983). According to Pea River, the Department must refund to a cooperative the taxes paid on advances that later are credited to the cooperative members.
On June 23, 1993, based on the authority of Pea River, the Cooperatives requested refunds of the utility gross receipts taxes and utility license taxes paid during 1989, 1990, 1991, and 1992 on specified amounts advanced from cooperative members that later were returned to those members in the form of patronage credits. The Cooperatives supplemented their refund requests on March 15, 1995, to request refunds of the utility gross receipts taxes paid during 1993 on advances that later were returned to their members. During the course of this litigation, the Cooperatives stipulated that they are not due any refunds from 1989 because those claims are barred by the statute of limitations.
After conducting audits of the Cooperatives, the Department issued partial refunds to all three Cooperatives of the 4% utility gross receipts taxes paid from June 1990 to August 31,1992, and of the 6.7% utility gross receipts taxes paid from September 1, 1992 to December 31, 1992. The Department later issued partial refunds of the 6.7% utility gross receipts taxes paid for 1993 to New Hope and to Mon-Cre, but not to Farmers. The requests for refund of the 2.5% utility license tax have not been granted as to any of the Cooperatives. The Department says that it issued partial refunds because the Cooperatives included amounts in their refund requests on which utility gross receipts taxes and utility license taxes were not paid.
The Cooperatives then petitioned the trial court for a writ of mandamus requiring the Department to issue the refunds. The Cooperatives also filed a complaint for a declaratory judgment, asking the trial court to declare that advances collected from cooperative members that later are returned to those members are not “gross receipts” for purposes of the utility gross receipts tax established by § 40-21-82, Ala.Code 1975. After hearing testimony presented ore tenus from the Cooperatives’ accountant and an auditor for the Department, the trial court entered a judgment in favor of the Cooperatives. The trial court declared that the patronage credits made by the Cooperatives to their members were refunds of member advances and not “gross receipts” for purposes of the state’s 6.7% utility gross receipts tax, and it held that the Cooperatives are due refunds of the taxes previously paid on those member advances. The trial court also granted in part the petition for a writ of mandamus. The court required the Department to issue the requested refunds, but it also deleted a specific category of member advances on which utility gross receipts taxes were not collected and deleted advances refunded to “tax exempt” cooperative members, such as the United States Post Office.
The Department contends that the trial court misconstrued § 37-6-20, Ala.Code 1975, as a taxing statute, and that it confused a refund of excess revenues to its members by the Cooperatives with a tax refund to the Cooperatives by the Department. The Department argues that the Cooperatives are seeking refunds of taxes that they never paid on sources of revenue other than member advances, such as fees from long distance carriers, directory advertising, installation and repair of equipment, renting of equipment and poles, interest and dividends', and satellite dish services. Essentially, the Department takes the position that if the Cooperatives use other revenue to increase the amount that they are able to refund to their members as patronage credits, any tax refunds on member advances that later are credited back to the members should be prorated to reflect the percentage of the initial advances when compared to the Cooperatives’ total revenue. The Department also *182 argues that this case can be distinguished from Pea River because telephone cooperatives receive a much larger portion of then-revenue from outside sources than do electric cooperatives, which, it says, depend primarily on member advances for their operating expenses.
In response, the Cooperatives argue that the patronage credits given to their members clearly constituted a return of the initial advances that exceeded their operating expenses. The patronage credits were larger, they say, because other revenue was applied toward the Cooperatives’ operating expenses. According to the Cooperatives, no member received a patronage credit in excess of the amount initially advanced. Furthermore, the Cooperatives’ accountant testified that all cooperatives, both electric and telephone, receive revenue from outside sources; therefore, the Cooperatives argue, Pea River applies to this case.
The following illustration will be helpful. The 100 members of Cooperative X each advance $10 per month for one year ($120), for a total advanced of $12,000. Cooperative X pays utility gross receipts taxes on the entire $12,000. If operating expenses for the year total $9,000, then Cooperative X must credit $3,000 to its members at the year’s end, and it would be entitled to seek a refund from the Department of the taxes paid on that $8,000. If, however, Cooperative X receives additional revenue of $3,000 during the year, then it needs less of its members’ advances to meet operating costs. In that case, Cooperative X must credit $6,000 to its members at the year’s end. The Cooperatives contend that Cooperative X would be entitled to seek a refund of the taxes paid on the entire $6,000 credited to its members. The Department contends that Cooperative X is entitled to seek a refund only of the taxes paid on $3,000 of the $6,000 credited.
The trial court concluded as follows:
“Rather than focusing on whether utility taxes were paid on the member advances, the Department focuses on whether taxes were paid on revenues of the Cooperatives received from other sources. In essence, the Department contends that the Cooperatives were able to refund a portion of their member advances because they received payments from other sources, such as interest payments on their bank accounts, pole rentals and charges to outside companies for using their network. Department witness Warren Watson pointed out that utility taxes are not paid on such amounts received from non-members. However, § 37-6-20, Code of Alabama (1975) places no restriction on the revenues that may be considered by a cooperative when it makes its year end determination as to whether it has collected more member advances than it actually needed to run the cooperative. The Cooperatives’ expert witness, L. Jerry Mitchell, C.P.A., whose firm serves as auditors for a large number of cooperatives in the state, testified credibly that all cooperatives, including the cooperatives in Pea River, receive revenue from a variety of sources, such as pole rental or interest income. In fact, Mr. Mitchell testified that basic cooperative accounting requires that such outside sources of revenue be taken into account prior to determining the amount of member advances that are actually needed and can be retained. While these payments from outside sources may have the effect of increasing the amount of member advances that are not ultimately needed and thus subject to refund, they do not change the nature of the refunds themselves. There is no evidence that the amount of patronage credits to any member exceeded the amounts advanced by such member to the Cooperative over the course of the year. Thus, the only issue is whether utility taxes were actually collected on the member advances to the Cooperatives which were later refunded in the form of patronage credits. If so, a corresponding tax refund is due when the patronage credits are made.”
We agree. Even though § 37-6-20 is not a taxing statute, it mandates that a cooperative return any excess advances to its members and allows those returns to be made in the form of patronage credits. According to Pea River, the Department is obligated to refund any utility gross receipts taxes paid on those patronage credits. We see no requirement *183 in § 37-6-20, Pea River, or the taxing statute relied upon by the Department, § 40-21-82, authorizing any reduction in those patronage credits, for tax refund purposes, by the amount of any additional revenue received by the Cooperatives.
The Department also contends that the trial court impermissibly shifted the burden of proof to the Department at trial, arguing that the court should have required the Cooperatives to calculate and prove the percentages of the patronage accounts upon which taxes had been paid. Because we conclude that the tax refunds should be based upon the entire amount credited to the patronage accounts, we need not address this contention.
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1976.
AFFIRMED.
All the judges concur.